J-A09028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ISAIAH JACKSON | : | No. 431 EDA 2021 |

Appeal from the Order Entered January 22, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004209-2019

BEFORE: NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED AUGUST 9, 2022**

The Commonwealth appeals from the order granting the suppression motion of Isaiah Jackson ("Jackson"). We vacate the order and remand for further proceedings.

The factual and procedural history of this appeal is as follows.[1] In the early morning hours of May 10, 2019, Philadelphia Police Officer Mark Brockington conducted a traffic stop after observing Jackson driving a vehicle without its headlights activated. Before approaching the vehicle, Officer

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We summarize the factual background of this appeal from the suppression record. We note that the Commonwealth failed to ensure that the certified record contained a copy of the suppression hearing transcript. We could find this appeal waived. **See Commonwealth v. Houck**, 102 A.3d 443, 456-57 (Pa. Super. 2014) (noting that when an appellant fails to ensure the presence in the certified record of a transcript necessary for review, this Court can dismiss the claim). However, we have obtained a copy upon an informal inquiry to the suppression court. We therefore decline to find waiver.

Brockington ran a search of the car's license plate number and obtained information that the car belonged to Kevin Erdman ("Erdman"), who lived in Delaware County. *See* N.T., 1/22/21, at 14-16. The officer then approached the car and began talking to Jackson. Jackson gave the officer a sales receipt and insurance information for the vehicle, but told the officer that he did not have his driver's license with him. Jackson identified himself and initially spelled his last name "R-O-A-C-H."[2] *Id*. at 19. The officer stayed by Jackson's car and twice checked for Jackson's license information over his radio, but no record was found. The officer again asked Jackson for the spelling of his last name, and Jackson responded "R-O-A-C-H-E." *Id*. at 20. The officer then received information that Jackson did not have a driver's license. When the officer asked Jackson who owned the car, Jackson replied, "Uncle Harold," who lived in "Southwest [Philadelphia]." *Id*. at 18-20.

Officer Brockington then asked Jackson to exit the car. *See id*. at 20. The officer also requested that police contact Erdman. *See id*. at 20-21. The officer then searched the car and recovered a .22 caliber pistol and called for the car to be towed. *See id*. at 22-23. After verifying that Jackson did not have a license to carry a firearm, the officer arrested him for carrying a firearm without a license and carrying a firearm on the public streets of Philadelphia.[3]

---

[2] Jackson also went by the last name Roache. The Commonwealth does not dispute that Roache and Jackson are both proper surnames for Jackson.

[3] 18 Pa.C.S.A. §§ 6106(a)(1), 6108.

After the Commonwealth charged Jackson with the above offenses, Jackson moved to suppress the gun, asserting, in relevant part, that Officer Brockington conducted an improper, warrantless search of the car. At the suppression hearing, the Commonwealth indicated that it was challenging Jackson's expectation of privacy in the car. *See* N.T., 1/22/21, at 26. Officer Brockington was the only witness to testify, and he recounted the circumstances surrounding the traffic stop and Jackson's arrest. On redirect examination by the Commonwealth, the officer testified that Erdman had arrived at the scene of Jackson's arrest and told the officer that he knew Jackson but did not give him permission to drive the car.[4] *See id*. at 65. During arguments to the suppression court, the Commonwealth then referred to Erdman's statement, and the court announced that it would not consider the statement for the truth of whether Erdman had given Jackson permission to drive the car because it was hearsay. *See id*. at 96, 105. The Commonwealth did not object to this hearsay ruling, nor did it assert that the court could consider Erdman's statement even if it was hearsay. *See id*. at 104-09.

_____

[4] We note that the Commonwealth initially asked Officer Brockington about Erdman's statement during direct examination, but withdrew the question after Jackson objected to hearsay. *See* N.T., 1/22/21, at 24-27. Jackson then cross-examined the officer and elicited testimony that the car had not been reported as stolen. *See id*. at 42, 56-57. The suppression court, during redirect examination, and over Jackson's objection, allowed the Commonwealth to question the officer about Erdman's statements that Jackson did not have permission to drive the car because Jackson's cross-examination had opened the door. *See id*. at 64-65.

At the conclusion of the hearing, the suppression court granted Jackson's motion to suppress the gun reasoning that: (1) the Commonwealth failed to establish that Jackson lacked an expectation of privacy in the car; (2) the officer lacked exigent circumstances to conduct a warrantless search; and (3) the officer conducted an improper inventory search of the car. The Commonwealth timely appealed,[5] and both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue on appeal:

> Did the suppression court err by concluding that [Jackson] established and enjoyed a reasonable expectation of privacy in a vehicle and that the police conducted an illegal search of that vehicle?

Commonwealth's Brief at 4.

The following standard and scope of review govern our review from an order suppressing evidence. An appellate court defers to the suppression court's findings of fact that are supported in the record but reviews the court's legal conclusions *de novo*. ***Commonwealth v. Barr***, 266 A.3d 25, 39 (Pa. 2021). Our scope of review is limited to the evidence presented at the suppression hearing. ***Commonwealth v. Davis***, 102 A.3d 996, 999 (Pa. Super. 2014). We may consider only the defendant's evidence and the Commonwealth's evidence that, when read in context of the record at the suppression hearing, remains uncontradicted. ***Id***.

_____

[5] ***See*** Pa.R.A.P. 311(d) (permitting the Commonwealth to take an interlocutory appeal as a matter of right where it certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution).

To prevail on a motion to suppress challenging a search, the defendant must have a privacy interest in the area in which the government intruded. *See Commonwealth v. Enimpah*, 106 A.3d 695, 699 (Pa. 2014). An expectation of privacy exists when the defendant exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. *See Commonwealth v. Kane*, 210 A.3d 324, 330 (Pa. Super. 2019). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." *Commonwealth v. Jones*, 874 A.2d 108, 118 (Pa. Super. 2005).

Challenges to a defendant's expectation of privacy involve shifting burdens of proof. *See Enimpah*, 106 A.3d at 700-01. The Commonwealth initially bears the burden of *producing* evidence that shows the defendant lacked a reasonable expectation of privacy in the area searched. *See id*. at 702. If the Commonwealth produces evidence placing the defendant's lack of a reasonable expectation of privacy at issue, then the burden shifts to the defendant to *persuade* the suppression court that he has a reasonable expectation of privacy in the area searched. *See Enimpah*, 106 A.3d at 701 (holding that "[t]o be sure, under our jurisprudence, the defendant bears the burden of persuasion with respect to his privacy interest" (internal citation omitted)). Where the Commonwealth *produces* evidence placing the defendant's reasonable expectation of privacy at issue, and the burden of

- 5 -

persuasion has shifted, the defendant may, but is not required to, produce his own evidence to meet his burden to **persuade** the court that he had a reasonable privacy interest in the area searched. **See Enimpah**, 106 A.3d at 702 & n.6. Thereafter, it is incumbent on the suppression court to consider all of the evidence to determine whether the Commonwealth met its burden of production, and, if so, whether the defendant met his burden of persuasion that he possessed a reasonable expectation of privacy in the car.[6]

The Commonwealth asserts that it produced evidence placing at issue whether Jackson had an expectation of privacy in the vehicle because Officer Brockington testified that Jackson: (1) was driving the car without turning on the car's headlights; (2) lied about having a driver's license; (3) gave an incorrect spelling of his last name; and (4) claimed, falsely, that his uncle owned the car. **See** Commonwealth's Brief at 13. According to the Commonwealth, this evidence satisfied its burden of production under **Enimpah**, and the suppression court erred by refusing to then shift the burden to Jackson to persuade the court that he had an expectation of privacy in the

---

[6] If the Commonwealth's evidence conclusively establishes that the defendant had no expectation of privacy in the area searched, then the Commonwealth has met its burden of proving that the evidence was properly obtained, and the suppression motion challenging the search must be denied. **See Enimpah**, 106 A.3d at 702 (noting that the Commonwealth's burden is "to give the [suppression] court evidence allowing" the court to conclude a defendant lacked a reasonable expectation of privacy); **see also** Pa.R.Crim.P. 581(H) (providing that "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights").

vehicle. *See id*. at 13-18. The Commonwealth concludes that Jackson presented no evidence that he had a reasonable expectation of privacy in the vehicle, and that the suppression order should be reversed.[7] *See id*. at 16-18.[8]

The suppression court concluded that the Commonwealth "did not present any evidence to demonstrate that [Jackson] was not an authorized user of the vehicle." Suppression Court Opinion, 9/8/21, at 5. The court explained that the evidence that Jackson did not have a driver's license, was not the registered owner, and gave a wrong spelling of his last name was only probative of whether Officer Brockington had probable cause to search the car, not whether Jackson had permission to use the car. *Id*. The court emphasizes that it considered Erdman's statement to Officer Brockington, namely, that Jackson did not have permission to use the car, to be hearsay,

_____

[7] To the extent the Commonwealth argues that its evidence triggered Jackson's burden to produce evidence, we disagree. *See Enimpah*, 106 A.3d at 702 n.6 (noting that although a defendant "will typically present his own evidence to satisfy this burden, he is not required to do so" and "may succeed without presenting any evidence at all" (citation omitted)).

[8] The Commonwealth also argues the suppression court erred in refusing to consider Erdman's statement that he did not give Jackson permission to use the car for the truth of the matter asserted. However, this issue is waived because the Commonwealth did not object to the court's hearsay ruling at the suppression hearing, and, further, its Rule 1925(b) statement did not specifically identify the suppression court's evidentiary ruling as an error complained of on appeal. *See* Pa.R.A.P. 302(a), 1925(b)(4)(ii), (vii).

which it did not consider the statement for the truth of the matter asserted. ***Id.***

Following our review, we conclude that the suppression court erred in declining to consider any of the Commonwealth's circumstantial evidence that Jackson lacked a reasonable expectation of privacy in the car. The court was required to evaluate the subjective and objective reasonableness of Jackson's expectation of privacy based on all circumstances from the evidence presented at the suppression hearing. ***See Enimpah***, 106 A.3d at 700-01 (requiring that the Commonwealth produce evidence that the defendant lacked a reasonable expectation of privacy in the area searched); ***Jones***, 874 A.2d at 118 (requiring that a court evaluate the reasonableness of an expectation of privacy based on the totality of the circumstances). The suppression court refused to do so, concluding that the Commonwealth's evidence was only probative of whether Officer Brockington had probable cause to search the vehicle. However, our courts have rejected similar attempts to compartmentalize the probative value of evidence when considering the totality of the circumstances. ***Cf. In Interest of A.A.***, 195 A.3d 896, 910 (Pa. 2018) (holding that it is error to ignore facts gleaned during an initial traffic stop when determining whether an officer had reasonable suspicion to conduct a second detention), *abrogated on other grounds by **Commonwealth v. Barr***, 266 A.3d 25 (Pa. 2021); ***Commonwealth v. Carter***, 105 A.3d 765, 772 (Pa. Super. 2014) (disapproving of a "divide-and-conquer" approach of considering individual factors in isolation).

In the case *sub judice*, the Commonwealth presented uncontradicted evidence that Jackson was driving in the early morning hours without turning on the headlights of his vehicle, did not have a license, misspelled his name to Officer Brockington, and claimed that the car belonged to his "Uncle Harold" in Southwest Philadelphia, when Erdman, a resident of Delaware County, was the actual registered owner of the car. In our view, the totality of the circumstances **could** sustain a finding that Jackson's lack of a driver's license and inability to correctly identify the registered owner of the vehicle, as well as his evasiveness, placed at issue whether he had a reasonable expectation of privacy in the car.[9] We therefore conclude that the suppression court erred

---

[9] This Court has found that a defendant lacked a reasonable expectation of privacy in circumstances similar to this case. **See Commonwealth v. Maldonado**, 14 A.3d 907, 911 (Pa. Super. 2011) (holding that Maldonado failed to establish a reasonable expectation of privacy when he presented no evidence that he had permission to drive his girlfriend's car, where Maldonado did not have a license and the vehicle's registration was expired); **Commonwealth v. Burton**, 973 A.2d 428, 436 (Pa. Super. 2009) (*en banc*) (holding that Burton failed to demonstrate a reasonable expectation of privacy in a car that he did not own and was not registered to him); **but see Commonwealth v. Peak**, 230 A.3d 1220, 1224-25 (Pa. Super. 2020) (noting that although the Commonwealth waived a challenge to Peak's privacy interest in a car, Peak's own testimony that he had permission to use a car from the registered owner could establish a reasonable expectation of privacy), *appeal denied*, 239 A.3d 1096 (Pa. 2020), *cert. denied sub nom.* **Peak v. Pennsylvania**, 141 S. Ct. 1426 (2021). We emphasize that the Commonwealth, in meeting its burden of production under **Enimpah**, cannot rely solely on the fact that an individual is driving a car he does not own to establish the lack of a privacy interest. **See Commonwealth v. Newman**, 84 A.3d 1072, 1078 (Pa. Super. 2014). The mere fact that the individual does not have a property interest in the car will not establish the individual's lack of a privacy interest in the car. **See Byrd v. United States**, 138 S. Ct. 1518, 1531 (2018) (holding that the fact that a driver is not listed on a rental
*(Footnote Continued Next Page)*

in declining to consider any of the Commonwealth's uncontradicted circumstantial evidence in relation to Jackson's expectation of privacy.

For these reasons, we vacate the order and remand for the court to render findings of fact and conclusions of law on whether the evidence produced by the Commonwealth at the suppression hearing placed Jackson's lack of a reasonable expectation of privacy in the car at issue, shifted the burden to Jackson to persuade the court that he enjoyed a privacy interest in the car, and whether Jackson met his burden of persuasion that he had a reasonable expectation of privacy in the car. *See **Commonwealth v. Grundza***, 819 A.2d 66, 68 (Pa. Super. 2003) (holding an appellate court does not make findings of fact and conclusions of law in the first instance and that the suppression court's failure to do so precludes appellate review).

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2022

---

agreement for a car will not defeat a driver's reasonable expectation of privacy in the car).