J-A01012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTARRIOS J. FLYTHE | : | |
| | : | |
| Appellant | : | No. 3139 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 26, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003302-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                          **FILED MARCH 2, 2026**

Appellant Antarrios J. Flythe appeals from the Judgment of Sentence imposed in the Delaware County Court of Common Pleas following his convictions of firearms offenses.  He challenges the denial of his motion to suppress and the sufficiency of the evidence underlying his convictions.  After careful review, we affirm.

We glean the relevant facts and procedural history from the certified record, including the trial court's Opinion.  On April 11, 2023, at 2:40 AM, Pennsylvania State Trooper Thomas Platt and his partner observed a vehicle with North Carolina plates driving in the left lane of Route 95 south and exceeding the speed limit.  Trooper Platt activated his vehicle's sirens, emergency lights, and spotlights to pull the car over.  Trooper Platt testified that as the vehicle slowed down, he saw the passenger in the rear seat reach over the back seat, lift up what he inferred was the trunk's floorboard where

a white object sat, and then the white object disappeared from his view.[1] The car then pulled onto the shoulder of the road. Mr. Ridge Tow was the driver of the vehicle; Ali Abdul-Malik was the front seat passenger.[2] We highlight the fact that Appellant was merely a passenger in the car, seated in the right rear passenger seat.

Trooper Platt requested Mr. Tow's driver's license, registration, and insurance card and noticed the smell of burnt marijuana emanating from the car. Mr. Tow provided his driver's license but was not able to produce other documents, and indicated the car belonged to his mother. Trooper Platt asked Mr. Tow to step out of the vehicle to speak with him, and placed him in the back seat of the trooper's vehicle so Trooper Platt could access the motor vehicle database to identify the vehicle. During questioning in the police car, Mr. Tow could not identify exactly where they had been in Philadelphia and whom they had visited and denied having contraband and firearms in the car. Trooper Platt asked for consent to search the vehicle, which Mr. Tow denied. Trooper Platt then informed Mr. Tow that because he smelled marijuana, he was going to call in the canine unit to conduct further investigation. He then asked Mr. Tow to wait outside the police vehicle.

After radioing for a canine team, Trooper Platt went back to Mr. Tow's vehicle and asked the passengers to step out. When the passengers asked

---

[1] Upon executing the search warrant, troopers identified the white object as a pair of sneakers.

[2] Ali Abdul-Malik's appeal is pending at Docket No. 366 EDA 2025.

- 2 -

why, Trooper Platt said, "I'll explain when you get out," and when questioned further by the passengers, he said "case law says I can remove passengers from a vehicle during a traffic stop." ***See*** Suppression Hr'g, 2/16/24, Cmwlth. Exh. 8, 18:00-21:50 (video/audio recording of Trooper Platt's interactions with passengers). The passengers reluctantly stepped out of the car and Trooper Platt explained that he had called the canine unit to conduct further investigation and asked them to wait outside the police vehicle. ***Id***. at 21:50-23:29.

Trooper Evan Worth and his canine partner arrived approximately 30 minutes later and Troopers Platt and Worth did a preliminary walk around the vehicle, shining their flashlights through the vehicle windows. While doing so, each trooper saw the butt of a gun sticking out from under the front driver's seat. Troopers then handcuffed all three men. After the canine sniffed around the outside of the vehicle and alerted for contraband, the Troopers transported the passengers to the Media State Trooper barracks to await a search warrant for the car.

Upon execution of the search warrant for a search of the car, state troopers recovered a second gun in the glove compartment of the vehicle, which DNA swab testing revealed to be co-defendant Abdul-Malik's DNA. A third firearm was found between the cargo area and the backseat where Appellant had been sitting. The DNA swab sample from that third firearm matched Appellant's DNA.

The Commonwealth charged Appellant on April 11, 2023, with one count each of Possession of Firearm Prohibited and Firearms Not To Be Carried Without a License, and two counts of Possession of Drug Paraphernalia.[3]

On November 17, 2023, Appellant filed an omnibus pre-trial motion seeking to quash the criminal information and suppress the gun that the troopers found in the car in which Appellant was a passenger. In his motion to suppress, Appellant asserted, *inter alia*, that the smell of marijuana alone could not support the investigative detention that occurred beyond the purpose of the traffic stop.

The court held a hearing on the omnibus pre-trial motion on February 16, 2024, at which Trooper Platt testified and the court admitted audio/video recorded by the troopers during the stop.[4] Following argument from counsel, the court denied Appellant's motion to suppress.

On March 20, 2024, the case proceeded to a two-day jury trial, following which the jury found Appellant guilty of Firearms Not To Be Carried Without a

---

[3] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 35 P.S. §780-113 (a)(32), respectively. Following Appellant's preliminary hearing, the court dismissed the Possession of Contraband charges.

[4] The hearing on February 16, 2024, first addressed the motion to quash that Appellant had included in the omnibus pre-trial motion and the court then quashed two counts of Possession of Drug Paraphernalia charged against him. The Notes of Testimony relevant to Appellant's motion to suppress begin on page 32 of the hearing transcript and the court incorporated the Commonwealth's exhibits admitted in connection with the motion to quash as part of the motion to suppress.

License. After a stipulated bench trial, the court found Appellant guilty of Possession of Firearm Prohibited.[5]

On June 26, 2024, the court sentenced Appellant to an aggregate term of five to twelve years' imprisonment, followed by three years' probation.

Following the court's denial of his post-sentence motions, Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant provides the following Statement of the Questions Involved:

I. Did the trial court err when it denied Appellant's Motion to Suppress evidence recovered during the traffic stop where there was no probable cause to support the search?

II. Was the evidence sufficient to support Appellant's convictions where there was no evidence to establish that Appellant either physically or constructively possessed the weapon found in the vehicle?

Appellant's Br. at 4.

In his first issue, Appellant concedes that the officer had probable cause to stop the vehicle for a traffic violation, *i.e.*, exceeding the speed limit. He asserts, however, that the purpose of the traffic stop ended prior to Appellant's removal from the vehicle and his detention was, thus, not based on reasonable suspicion that he was involved in criminal activity. Appellant's Br. at 9-15. He contends that the smell of marijuana was not enough to support reasonable

_____

[5] The parties stipulated that Appellant has a prior felony conviction for robbery in North Carolina.

suspicion to extend the traffic stop to question Mr. Tow and "to conduct a canine sniff." *Id.* at 10. Appellant concludes that "the record of the suppression hearing makes clear that Trooper Platt lacked reasonable suspicion to extend the traffic stop by detaining the car's occupants to secure a canine sniff." *Id.*

Our review of "a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). This Court is "bound by the factual findings of the suppression court," but we are not bound by its legal conclusions, which we review *de novo*. *Commonwealth v. Briggs*, 12 A.3d 291, 320-21 (Pa. 2011). We may review only "the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Harlan*, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

It is well-settled that "a defendant charged with a possessory offense has automatic standing to challenge a search." *Commonwealth v. Peak*, 230 A.3d 1220, 1224 (Pa. Super. 2020)(citation omitted). "Nevertheless, 'in order to prevail, the defendant must show that he had a privacy interest in the area searched.'" *Id.* (citation omitted).

In *Commonwealth v. Enimpah*, 106 A.3d 695 (Pa. 2014), our Supreme Court held that if the Commonwealth presents evidence which shows

the defendant had no such privacy interest, the burden shifts to the defendant to demonstrate he had a reasonable expectation of privacy in the area searched.

> While cursorily similar, standing and privacy interest are different concepts serving different functions. Standing is a legal interest that empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution. It ensures a defendant is asserting a constitutional right of his own. *See* [*Commonwealth v. Hawkins*, 718 A.2d 265,] 269 (Pa. 1998) (citations omitted) (noting this Court's refusal to recognize vicarious assertions of constitutional rights). **The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated.**

*Id.* at 698–99 (Pa. 2014)(some citations omitted; emphasis added. *See also Commonwealth v. Millner*, 888 A.2d 680, 692 (Pa. 2005) (observing that "a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests.").

Here, the motion to suppress was a request to suppress the gun that the state troopers found in the car in which Appellant was a passenger. Before addressing the actions of the troopers, Appellant must establish that he, as a passenger in the car, had a reasonable expectation of privacy in the vehicle. Appellant, however, presented no evidence showing that he had any expectation of privacy in the vehicle. In fact, his attorney conceded at the suppression hearing that Appellant did not have a reasonable expectation of

privacy in the vehicle. N.T. Suppression Hr'g, at 66. Because Appellant has not established the threshold basis upon which to grant a suppression motion, pursuant to **Enimpah**, **supra**, his Fourth Amendment rights are not implicated. Accordingly, Appellant's first issue fails to garner relief.

In his second issue, Appellant challenges the sufficiency of the evidence supporting his firearm offenses. Specifically, he argues that the Commonwealth failed to present evidence to prove that he actually or constructively possessed the weapon found in the vehicle. Appellant's Br. at 15.

Our standard and scope of review of challenges to the sufficiency of the evidence is well-established. "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa. Super. 2018)(citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." **Id.** (citation omitted). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary." **Id.** (citation omitted).

Both of Appellant's firearm offenses require proof of possession.[6] The Crimes Code defines the term "possession" as "an act, within the meaning of this section, if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c).

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." **Parrish**, 191 A.3d at 36 (citation omitted). "Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction." **Id.**, citing **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (conviction under 18 Pa.C.S. § 6106(a) supported by a finding of constructive possession). **See also Commonwealth v. Parker**, 847 A.2d 745 (Pa. Super. 2004) (same).

"Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." **Hopkins**, **supra** at 820 (citation and quotation omitted). "We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control

_____

[6] **See** 18 Pa.C.S. §§ 6105(a)(1) ("A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, . . . shall not possess, use, control, . . . a firearm in this Commonwealth."); 18 Pa.C.S. §§6106(a)(1) (". . . [A]ny person who carries a firearm in any vehicle . . . without a valid and lawfully issued license under this chapter commits a felony of the third degree.).

the contraband and the intent to exercise that control." *Id.* (citation and quotation marks omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Id.* (citation and quotation marks omitted).

"It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Parrish,* 191 A.3d at 36-37 (internal brackets, quotation marks, and citation omitted). "In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." *Id.* at 37.

Further, "a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." *Id*. (citation omitted). "Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt." *Id.* (citation omitted). Rather, "knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." *Id*.

Here, we agree with the trial court that sufficient evidence established that Appellant constructively possessed the firearm found in the vehicle. First, Trooper Platt observed Appellant reaching behind the seat after the police lights and sirens were activated and the search of the vehicle recovered a firearm from that area. Moreover, the firearm contained Appellant's DNA.

Based on the totality of the circumstances, we conclude the evidence supported the element of possession. Accordingly, this issue merits no relief.

In sum, we conclude the trial court properly denied Appellant's suppression motion and sufficient evidence supported the finding that Appellant possessed the firearm. We, thus, affirm Appellant's judgment of sentence.

Judgment of Sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/2/2026