J-A17014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br>Appellant | : <br> : <br> : <br> : <br> : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| v. | : <br> : <br> : <br> : | |
| WAYNE CATLETT | : <br> : | No. 1431 EDA 2021 |

Appeal from the Order Entered June 22, 2021
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0004629-2017

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED OCTOBER 13, 2022**

The Commonwealth appeals from the Delaware County Court of Common Pleas' order granting Wayne Catlett's motion to suppress, *inter alia*, contraband obtained pursuant to a warrantless search of his vehicle following a traffic stop as well as statements made to police before and after that search. We affirm, based largely on the well-reasoned opinion of the trial court.

Catlett filed a suppression motion on January 13, 2021 after Officer Nicholas Tokonitz of the Yeadon Borough Police Department found drugs and a firearm in his vehicle and drugs on his person after initiating a traffic stop

_____

[*] Retired Senior Judge assigned to the Superior Court.

of Catlett's vehicle in Philadelphia County.[1] In the motion, Catlett argued that Officer Tokonitz had illegally stopped and searched him and illegally searched his car without a warrant in violation of, *inter alia*, Article I, Section 8 of our state constitution. The trial court held a hearing on the motion on March 31, 2021.

The Commonwealth called Officer Tokonitz to the stand. Officer Tokonitz testified that on the evening of May 15, 2017, he was on routine patrol by himself in Yeadon Borough, Delaware County, when he saw a black Audi go through a steady red light. **See** N.T., 3/31/21, at 14. Without activating his lights, Officer Tokonitz pursued the Audi, and was able to catch up to the Audi once it crossed over into Philadelphia County and stopped at a red light. Officer Tokonitz testified that he stopped behind the Audi at the red light, at which time he maintained that he smelled the odor of raw marijuana emanating from the Audi. **See id.** at 17, 19. Officer Tokonitz testified that raw, or fresh, marijuana has a different odor from burnt marijuana. **See id.** at 18.

Officer Tokonitz testified that it was not safe to stop the Audi at that intersection, and he therefore followed the Audi as it made a right turn at the intersection. Once the Audi approached a safe area, which was residential and

---

[1] This was the second suppression motion filed by Catlett. Catlett first filed a suppression motion on February 11, 2020, alleging, *inter alia*, that the traffic stop made in Philadelphia, and therefore outside of Officer Tokonitz's jurisdiction, violated the Municipal Police Jurisdiction Act, 42 Pa. C.S.A. §§ 8951-8955. **See** N.T., 2/21/20, at 37-41. The trial court denied this motion on March 30, 2020.

lit by streetlights, Officer Tokonitz activated his lights and the Audi immediately pulled over. *See id.* at 20-21, 75. As Officer Tokonitz approached the Audi, he testified that he continued to smell raw marijuana. *See id.* at 23. The officer approached the driver of the vehicle, who was alone in the car and subsequently identified as Catlett. Officer Tokonitz asked Catlett for his paperwork, which Catlett produced. *See id.* at 23, 77.

Officer Tokonitz then told Catlett that he had seen him go through a red light and had smelled marijuana coming from the Audi. He asked Catlett if there was any marijuana in the car. *See id.* at 24, 25. According to Officer Tokonitz, Catlett told him there was marijuana in the car door on the driver's side. *See id.* at 24. At that point, the officer instructed Catlett to open the driver's door, and when he did so, Officer Tokonitz testified there was a small, knotted-up sandwich bag in plain view in the door pocket which contained approximately two grams of marijuana. *See id.* at 24, 27, 66.

After seizing the marijuana, Officer Tokonitz told Catlett to step out of the car. *See id.* at 27-28, 76, 79. He then instructed Catlett to step to the rear of the Audi, which Catlett did. *See id.* at 27-28, 76. In preparation for what Officer Tokonitz described as a "pat-down for officer safety," he asked Catlett if he had any drugs or weapons on his person. *Id.* at 28-29, 81. According to the officer, Catlett indicated he had "Oxys" in his left pant pocket. *See id.* at 29. Officer Tokonitz did not do a full pat-down but rather, only patted down the exterior of Catlett's left pant pocket. *See id.* at 29, 30-31.

The officer testified he felt a pill bottle, and retrieved the bottle from the pocket. *See id.* At 30-32. The bottle had 11 pills in it, only one of which matched the description of what was on the prescription bottle's label. *See id.* at 30

Officer Tokonitz placed Catlett in handcuffs, and recovered $4,900 in cash from Catlett's pants pocket. *See id.* at 31, 33. It was at this point that two other officers arrived at the scene. *See id.* at 34-35. Officer Tokonitz placed Catlett in the back of his patrol car. *See id.* at 35. According to the officer, he then called a tow truck for the Audi. *See id.* at 35. At that point, Officer Tokonitz testified he conducted a search of the Audi, and did so alone. *See id.* at 41. Officer Tokonitz stated that he found $6,700 in cash in the center console of the vehicle, one empty bottle of codeine syrup on the rear seat, one half-filled bottle with a torn-off label for codeine syrup, and a firearm wrapped inside a folded towel and knit cap in a side pocket of the vehicle's hatchback. *See id.* at 42-43. According to Officer Tokonitz, when he returned to his patrol car, Catlett asked the officer if he had found a gun in his car. *See id.* at 44-45, 59-60 .

Officer Tokonitz testified that another officer transported Catlett to the station while he followed the tow truck to the impound yard and arranged for a canine search to be conducted on the Audi. *See id.* at 44, 46, 48-49. The canine alerted positive to the exterior and interior of the Audi. *See id.* at 107. Officer Tokonitz then applied for, and obtained, a search warrant. *See id.* at

51. The officer testified that, while he was later processing Catlett, and after he told Catlett what the charges were, Catlett made statements about obtaining a firearm for his safety. *See id.* at 46-47. Officer Tokonitz also confirmed he had not read Catlett his *Miranda*[2] rights up to that point and that to his knowledge, Catlett had never been given *Miranda* warnings. *See id.* at 54, 61, 63. The defense did not present any witnesses.

Following oral argument, the court granted Catlett's suppression motion in an order dated June 22, 2021. The Commonwealth filed a notice of appeal, certifying that the court's suppression order would substantially handicap the prosecution of its case pursuant to Pa.R.A.P. 311(d). The Commonwealth also complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

In response, the trial court filed a Pa.R.A.P. 1925(a) opinion. In its opinion, the court recounted Officer Tokonitz's testimony. The court then stated that it found the officer's testimony credible, but only in part. The court explained:

> Officer Tokonitz's credibility is questionable regarding his testimony regarding the smell of fresh marijuana emanating from [Catlett's] vehicle, as well as his ability to smell such marijuana when it is sealed in a sandwich bag, [and when] the bag only contains approximately two grams of marijuana. Additionally, the Officer's credibility is highly questionable regarding [Catlett's] alleged response to the Officer's interrogation regarding the smell of marijuana.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 5 -

Trial Court Opinion, 11/23/21, at 6.

The court then explained why it had granted Catlett's motion to suppress the drugs and the firearm. It found, as an initial matter, that Officer Tokonitz had probable cause to stop Catlett's Audi based on his red light violation. However, the court then held that the warrantless search of the Audi was illegal under the Court's recent decision in **Commonwealth v. Alexander**, 243 A.3d 177, 181 (Pa. 2020), which held that Article I, Section 8 of our state constitution requires police to have both probable cause as well as exigent circumstances before they conduct a non-consensual, warrantless search of a vehicle.[3]

Applying **Alexander**, the court concluded that Officer Tokonitz had neither probable cause nor exigent circumstances to search Catlett's vehicle. To that end, the court noted that, even if Officer Tokonitz had smelled marijuana, the odor of marijuana alone is not sufficient to support a finding of probable cause to conduct a warrantless search of a vehicle under **Commonwealth v. Barr**, 266 A.3d 25, 44 (Pa. 2021). The court also found that, in any event, the Commonwealth had not established that Officer Tokonitz faced any exigent circumstances:

> The facts of this case show that [Catlett] complied with all of Officer Tokonitz's commands, was cooperative throughout the

---

[3] The trial court specifically noted that **Alexander** was applicable retroactively given that Catlett had properly raised and preserved the issue. **See** Trial Court Opinion, 11/23/21, at 9. The Commonwealth does not dispute the retroactivity of **Alexander**.

entire interaction, and made no furtive movements. Officer Tokonitz also waited to initiate the traffic stop at a safe location, where [Catlett's] vehicle was not obstructing the highway. In the area of the traffic stop occurred there were homes and streetlights and [Catlett] did not give any indication that he had any connection to the neighborhood. Furthermore, Officer Tokonitz admitted in this testimony that he was within the vicinity, approximately seven blocks, from a police station and could have called them to make sure the vehicle was secured while he got a search warrant, but he did not do so.

Trial Court Opinion, 11/23/21, at 9.

The court then rejected the Commonwealth's claim that the warrantless search of the vehicle had been a proper inventory search. The court noted that in order for an inventory search to be valid, the police must first have lawfully impounded the vehicle. **See** Trial Court Opinion, 11/23/21, at 10 (*citing* **Commonwealth v. Peak**, 230 A.3d 1220, 1226 (Pa. Super. 2020). The court observed that the authority to impound a vehicle stems from the police's reasonable community care-taking functions, functions which include removing a disabled vehicle from the highway, impounding vehicles violating parking ordinances, and the protection of the community's safety. **See id.** The court concluded the Commonwealth had not established that there were any legitimate reasons for towing Catlett's vehicle, as it was properly registered and insured and not in any way obstructing the roadway or impeding traffic.

Nonetheless, even assuming the vehicle had properly been impounded, the court noted that an inventory search will only be found to have been reasonable if the search is conducted pursuant to reasonable police procedures, in good faith and not for the sole purpose of investigation. **See**

*id.* The suppression court then found that an inventory search of Catlett's vehicle was not reasonable because the court "could not overlook" that Officer Tokonitz's motive for the search was to uncover criminal evidence. Trial Court Opinion, 11/23/21, at 10.

The suppression court also rejected the Commonwealth's argument that the warrantless search was justified because Officer Tokonitz was simply following the Yeadon Borough Police Department's policy on vehicle towing and impoundment, which allows officers to impound and conduct an inventory search of a car following a custodial arrest. The court explained: "Such an argument is without merit because *Alexander* was clear that there is a heightened standard to vehicle searches, and the policy that was followed here did not meet that standard, since it does not require more than probable cause." *Id.* at 11.

Likewise, the court rejected the Commonwealth's argument that the drugs and weapon would have inevitably been discovered because of the canine search and subsequent procurement of a search warrant for the Audi. According to the court, such an argument failed because it was necessarily premised on, and not independent of, the illegal arrest and search of the Audi. The court therefore found that the warrantless search of Catlett's vehicle was unconstitutional, and that it had therefore properly ordered the suppression of the drugs and weapon uncovered pursuant to that illegal search.

The court then proceeded to analyze whether Officer Tokonitz had conducted a lawful pat-down search of Catlett. In finding he had not, the court concluded that the officer did not provide articulable facts to support a finding that Catlett was armed and dangerous and put his safety in danger. **See id.** at 11 (*citing* **Commonwealth v. Zahir**, 751 A.2d 1153, 1158 (Pa. 2000) (stating that an officer may conduct a pat-down for weapons only if he has a reasonable suspicion that the individual is armed and presently dangerous to the safety of the officer or others)). Accordingly, the court found that it had properly suppressed the oxycodone pills found in Catlett's pocket during the pat-down.

Lastly, the court found that it had properly suppressed any statements made by Catlett regarding his knowledge of the marijuana and the gun that were found during the illegal search because he had not been **Mirandized**. The court essentially concluded that Catlett reasonably believed he was in custody from the inception of the traffic stop and therefore needed to be **Mirandized** before being asked about the marijuana or the firearm. As such, the court found that it had, along with the drugs and firearm, properly suppressed Catlett's statements to police.

In its appeal, the Commonwealth raises two issues:

A. Did the trial court err by suppressing evidence of a gun and illegal drugs recovered by the police from the vehicle after the police officer made a lawful car stop in which [Catlett] was the sole occupant; lawfully observed a bag of marijuana in plain view; properly searched [Catlett] incident to arrest and recovered additional illegally possessed drugs; found a loaded handgun

- 9 -

pursuant to a valid inventory search; and then after a canine sniff search, obtained a valid search warrant?

B. Did the trial court err by ruling that statements made by [Catlett] should be suppressed where [Catlett]t was not in custody when he made the first statement and subsequent statements were not prompted by any police questioning?

Commonwealth's Brief at 4 (trial court's and suggested answers omitted).

When this Court reviews a Commonwealth appeal from an order granting suppression, as we are tasked to do here, we may only consider the evidence produced at the suppression hearing and then, only that evidence which comes from the defendant's witnesses, along with the Commonwealth's evidence which remains uncontradicted. **See Barr**, 266 A.3d at 39. We must determine, in the first instance, whether the suppression court's factual findings are supported by the record and if they are, we are bound to those findings. **See id.** We must always keep in mind that the suppression court, as fact-finder, has the exclusive ability to pass on the credibility of witnesses. **See Commonwealth v. Fudge**, 213 A.3d 321, 326 (Pa. Super. 2019). Therefore, we will not disturb a suppression court's credibility determinations absent a clear and manifest error. **See id.** at 326-327.

We must also determine whether the legal conclusions the suppression court drew from its factual findings are correct. **See Barr,** 266 A.3d at 39. Unlike the deference we give to the suppression court's factual findings, we have *de novo* review over the suppression court's legal conclusions. **See Commonwealth v. Brown**, 996 A.2d 473, 476 (Pa. 2010).

- 10 -

Here, the Commonwealth begins its argument by asserting that Officer Tokonitz lawfully recovered the marijuana from the car door after directing Catlett to exit his vehicle as a matter of course during a lawful traffic stop, as the Commonwealth maintains it was Officer Tokonitz's prerogative to do so. *See* Commonwealth's Brief at 17. The problem with this argument is that the record shows this was not the way the events unfolded.

Instead, Officer Tokonitz testified that he smelled raw marijuana emanating from the car - testimony which was not credited by the suppression court - and specifically asked Catlett about the marijuana odor upon stopping him. According to Officer Tokonitz, Catlett confided that he had marijuana in the driver door of the car - again, testimony that the suppression court did not credit. It was at that point that Officer Tokonitz testified he directed Catlett to open the car door, obviously so that he could look for the marijuana, and saw the marijuana in the door in plain view. It was only after this search for, and seizure of, the marijuana that Officer Tokonitz directed Catlett to step out of the car. *See* N.T., 3/31/21, at 28, 76, 79, 81. Given Officer Tokonitz's testimony about the sequence of events, we see no merit in the Commonwealth's argument that the marijuana was properly seized because it was observed in plain view after Officer Tokonitz asked Catlett to step out of the car as a matter of course during the traffic stop.

The Commonwealth also maintains that the fact that Officer Tokonitz found marijuana in the car makes this case distinguishable from **Alexander.** It argues:

> In **Alexander**, no controlled substance was found prior to the search of the vehicle. In **Alexander**, the police officer performed a motor vehicle stop, observed only the odor of marijuana, was told [by] the driver that [he] and [the] passenger had just smoked a blunt, took the driver into custody, and then conducted a search of the interior of the vehicle including any containers. Here, Officer [Tokonitz] smelled marijuana and [Catlett] told him that there was marijuana in the driver's side door pocket. Based on his training and experience, Officer Tokonitz observed in plain view a bag of suspected marijuana.

Commonwealth's Brief at 20.

This argument is not only premised on factors the suppression court found were not supported by credible testimony, *i.e.* that Officer Tokonitz smelled marijuana and Catlett confirmed the presence of that marijuana, but fails to explain how the fact that Officer Tokonitz found marijuana in these circumstances somehow means Officer Tokonitz did not have to comply with **Alexander**'s clear holding that a warrantless search of a vehicle will only be constitutional under our state constitution if it is based on probable cause as well as exigent circumstances. Contrary to what the Commonwealth argues, we see no error in the suppression court's conclusions that Officer Tokonitz's warrantless search of Catlett's car was constitutionally required to comport with **Alexander**, and that the warrantless search failed to do so. We adopt the suppression court's reasoning in support of those conclusions. **See** Trial Court Opinion, 11/23/21, at 7-9.

We also adopt the suppression court's reasoning in rejecting the Commonwealth's claim, which it recycles in its brief here, that Officer Tokonitz's search of the car after he placed Catlett in handcuffs was a valid inventory search. ***See id.*** at 10. We see no error in the court's determination that it was not, especially in light of the court's factual finding that Officer Tokonitz's clear motive for the warrantless search of the car was to uncover additional evidence. ***See id.***

Lastly, we reject the Commonwealth's final argument under its first issue that the contraband found in Catlett's vehicle need not be suppressed because the canine search and eventual issuance of a search warrant meant the police would have inevitably discovered the drugs and firearm in the car. Once again, we turn to the suppression court's reasoning as to why this claim fails; namely, because it is premised on, and not independent of, Catlett's illegal arrest and the illegal search of the vehicle. ***See id.*** at 11; ***see also Commonwealth v. Fulton,*** 179 A.3d 475, 489-490 (Pa. 2018) (stating that under the inevitable discovery doctrine, illegally-obtained evidence need not be suppressed if the prosecution establishes that the evidence would have inevitably been discovered by legal means and without reference to the police error).

In its second issue, the Commonwealth argues the suppression court erred by suppressing the initial statement Catlett made to Officer Tokonitz about the marijuana in the driver's door of his car as well as the statements

Catlett made about the firearm after he had been arrested but not *Mirandized*. In the first instance, we note that the suppression court discredited Officer Tokonitz's testimony that Catlett made the initial statement admitting he had marijuana in his car door, and we are bound by that credibility determination. *See Fudge*, 213 A.3d at 326. As such, the Commonwealth failed to persuade the suppression court that the ensuing events were instigated by a voluntary, inculpatory statement.

However, we agree with the Commonwealth that the suppression court erred in finding that the initial statement, had it been made, must be suppressed because Catlett reasonably believed he was in custody from the inception of the stop. *Miranda* warnings were necessary only when Catlett was "taken into custody or otherwise deprived of his freedom[.]" *Miranda*, 384 U.S. at 478. Catlett was taken into custody for purposes of a *Miranda* analysis when his freedom of action was significantly denied or a reasonable person would believe his freedom of action is restricted by the officer's conduct. *See Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015). Relevant factors to consider include, but are not limited to, the reason for the stop, the location at which it occurs, the length of the stop, whether Catlett was transported against his will, whether Catlett was restrained, whether Officer Tokonitz threatened or used force, and the investigative methods employed by Officer Tokonitz. *See Commonwealth v. Whitmayer*, 144 A.3d 939, 948 (Pa. Super. 2016).

The analysis is complicated here by the suppression court's explicit credibility findings when contrasted with the sparsity of the suppression court's other explicit findings. While it is clear the suppression court did not believe Officer Tokonitz's testimony that Catlett admitted to having marijuana in the car door, it is not clear what the suppression court found to have happened instead. We acknowledge it was the Commonwealth's burden to establish that the evidence and statements gained during the stop were not the result of a violation of Catlett's rights, but it still remains that there is no evidence of record to support a finding that Catlett was taken into custody while he remained seated in his vehicle.

This may mean that Catlett's alleged initial statement that he was in possession of marijuana may be admissible at trial. However, in light of our finding that the suppression court properly suppressed all of the contraband found on Catlett's person and in his vehicle, including the marijuana, we fail to see how the admissibility of this statement allegedly admitting to the presence of marijuana in the vehicle remains relevant. The same is true for the two statements Catlett made about the presence of the firearm in his vehicle, given our conclusion that the firearm was properly suppressed. Even if the admissibility of these two statements remains relevant in the wake of our disposition affirming the suppression of the firearm, the Commonwealth has failed to show that the two statements were not the fruit of what we agree with the trial court to be the illegal search of his vehicle.

Order affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date:* _10/13/2022_

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA      :     CP-23-CR-0004629-2017

                :

          v.          :

                :

WAYNE CATLETT           :

                :

                :

---

**Michael Flowers, Esquire, Attorney for Commonwealth**
**Michael Malloy, Esquire, Attorney for Defendant**

**OPINION**

PAGANO, J.                                **November 23, 2021**

This is an appeal from this Court's Order of June 22, 2021, which granted Defendant's motion to suppress evidence. The Commonwealth subsequently filed a notice of appeal, certifying that the Court erred in suppressing the statements made by Defendant and erred in suppressing the physical evidence recovered from Defendant and from his car. For the forthcoming reasons, the suppression of evidence should be affirmed on appeal.

**FACTUAL BASIS**

The following are the factual findings of this Court. Officer Nicholas Tokonitz (hereinafter, Officer Tokonitz) is employed at the Yeadon Police Department where he has been so employed for the past six years. [N.T., 3/31/2021 p. 10]. Officer Tokonitz at the time of the incident was employed as a patrolman. Prior to his full-time employment with Yeadon Borough, Officer Tokonitz worked part-time in Yeadon Borough from 2010 to 2012, and part-time in Darby Borough from 2012 to 2015. [N.T., 3/31/2021 p. 10].

1

On May 15, 2017, at approximately 10:40 p.m., Officer Tokonitz was on-duty, alone, in full uniform and operating a marked police vehicle, traveling westbound on Chester Avenue in Yeadon Borough, Delaware County. [N.T., 3/31/2021 p. 12-13]. The weather was clear, the roadway was dry, and traffic was very light. [N.T., 3/31/2021 p. 13]. While Officer Tokonitz was traveling on Chester Avenue, he observed 2009 Audi A6 traveling southbound on the 1000 block of Church Lane approaching Chester Avenue, which is in Delaware County. [N.T., 3/31/2021 p. 12]. Officer Tokonitz observed the Audi run through a steady red signal at the intersection of Church Lane and Chester Avenue that was regulating southbound traffic on Church Lane. [N.T., 3/31/2021 p. 14]. Officer Tokonitz also noted that he believed the vehicle was traveling in excess of the speed limit but did not have any speed measuring device with him at the time. [N.T., 3/31/2021 p. 14].

As a result of his observations, Office Tokonitz immediately turned left in an attempt to catch up to the vehicle with the intent to initiate a traffic stop. [N.T., 3/31/2021 p. 15]. Due to the rate of speed the Audi was traveling, Officer Tokonitz fell back approximately 100 yards at its furthest in his pursuit. [N.T., 3/31/2021 p. 15]. The Audi caught a red traffic light at the next intersection of South 70th Street and Cobb Street, which is just over the border in Philadelphia. [N.T., 3/31/2021 p. 15]. The Audi did stop at this light and Officer Tokonitz was able to catch up as a result. [N.T., 3/31/2021 p. 15]. As Officer Tokonitz caught up to the vehicle while it was stopped at the light, he [allegedly] noticed the odor of marijuana emanating from the Audi. [N.T., 3/31/2021 p. 16]. Officer Tokonitz was positioned directly behind the Audi at the red light and recognized that it was [allegedly] clear that the odor was coming from that vehicle. [N.T., 3/31/2021 p. 17]. Officer Tokonitz recognized the raw marijuana odor due to his training and experience. [N.T., 3/31/2021 p. 19].

2

Due to the busy nature of the intersection of South 70th Street and Cobb Street, Officer Tokonitz attempted to find a safe location to initiate a traffic stop. [N.T., 3/31/2021 p. 19]. The vehicle then made a right turn onto Cobb Street Parkway, and Officer Tokonitz observed this to be a tight, curved roadway that is poorly lit. [N.T., 3/31/2021 p. 19]. As a result, he waited for the vehicle to get to a more open area. [N.T., 3/31/2021 p. 19]. Once the Audi got through the train trestle on Cobb Street Parkway, Officer Tokonitz activated his emergency lights and sirens and initiated a traffic stop. [N.T., 3/31/2021 p. 20]. The Audi complied and stopped immediately. [N.T., 3/31/2021 p. 21]. The roadway at the stop had lighting on the opposite side of the street and there was not a ton of vehicle traffic at that time. [N.T., 3/31/2021 p. 21]. Officer Tokonitz positioned his vehicle approximately six feet behind the Audi. [N.T., 3/31/2021 p. 22].

Prior to exiting his patrol vehicle, Officer Tokonitz again observed the smell of fresh marijuana from his vehicle. [N.T., 3/31/2021 p. 22, 78]. Officer Tokonitz then exited his patrol vehicle and approached the vehicle, where he continued to recognize the smell of fresh marijuana. [N.T., 3/31/2021 p. 22-23]. Officer Tokonitz made a driver's side approach and observed a male in the driver's seat, later identified as Wayne Catlett. [N.T., 3/31/2021 p. 22]. There were not any of additional occupants in the vehicle. [N.T., 3/31/2021 p. 23]. Officer Tokonitz asked Mr. Catlett for his credentials, his driver's license, vehicle registration, and insurance information, to which it was produced with no apparent issues. [N.T., 3/31/2021 p. 23, 25]. Officer Tokonitz then initiated conversation with Mr. Catlett and advised him that he observed a red- light violation and spoke to him about the odor of marijuana emanating from the vehicle. [N.T., 3/31/2021 p. 23]. Officer Tokonitz continued by asking if there was anything in the vehicle to which Mr. Catlett [allegedly] admitted that there was a bag of weed in the door.

3

[N.T., 3/31/2021 p. 24]. As a result, Officer Tokonitz had Mr. Catlett open the driver's door, at which time there was a small knotted-up sandwich bag that was then in plain view in the door reservoir. [N.T., 3/31/2021 p. 24]. The bag contained a leafy green vegetable-like substance consistent with marijuana. [N.T., 3/31/2021 p. 24]. At this time, there were no additional law enforcement officers at the scene. [N.T., 3/31/2021 p. 25].

After seizing the bag of marijuana, Officer Tokonitz requested that Mr. Catlett step out of the vehicle, to which he complied. [N.T., 3/31/2021 p. 28]. Officer Tokonitz then prepared to conduct a pat-down for officer safety. [N.T., 3/31/2021 p. 28]. Officer Tokonitz then asked Mr. Catlett if there was anything else that he needed to be aware of, at which point Mr. Catlett indicated that he had OxyContin. [N.T., 3/31/2021 p. 29]. At this point, Officer Tokonitz never Mirandized Mr. Catlett. [N.T., 3/31/2021 p. 47]. Officer Tokonitz then patted the exterior of Mr. Catlett's pocket and retrieved a prescription pill bottle that contained 11 pills, only one of which matched the description on the prescription bottle. [N.T., 3/31/2021 p. 29-30]. In addition to the pills, Officer Tokonitz also seized approximately $4,900 in cash off Mr. Catlett. [N.T., 3/31/2021 p. 31].

Officer Tokonitz then placed Mr. Catlett in handcuffs, at which point in time Officer Erby and Officer Curry arrived at the scene. [N.T., 3/31/2021 p. 33]. Mr. Catlett was then secured in Officer Tokonitz's patrol vehicle. [N.T., 3/31/2021 p. 35]. Officer Tokonitz then notified a tow truck, per department policy, to respond and remove a vehicle. [N.T., 3/31/2021 p. 35].

Following this, Officer Tokonitz began searching the vehicle for contents. [N.T., 3/31/2021 p. 35]. The vehicle search revealed another large amount of U.S. currency found in the center console area, approximately $6,700, and a half-filled bottle with a torn-off label for

4

codeine syrup underneath the driver's seat. [N.T., 3/31/2021 p. 42, 43]. Officer Takonitz then continued his search and found a loaded Springfield XTS .45 caliber handgun. [N.T., 3/31/2021 p. 43].

Mr. Catlett was then brought to Darby Borough's police station in order to be processed and fingerprinted. [N.T., 3/31/2021 p. 46]. Subsequently, while he was being explained what his charges were, Mr. Catlett started making open, unsolicited statements about how he had been shot a week prior, and he had gotten the gun to protect himself. [N.T., 3/31/2021 p. 47]. Mr. Catlett was still never Mirandized at this point in time. [N.T., 3/31/2021 p. 47].

Officer Tokonitz stayed at the scene and waited for the Audi to be towed to Seiple's Collision, where he followed. [N.T., 3/31/2021 p. 50]. A K-9 unit was also ordered by Officer Tokonitz to do a sniff for narcotics on the vehicle. [N.T., 3/31/2021 p. 49]. Officer Cardell and his K-9 partner arrived at Seiple's Collision to do the K-9 sweep. [N.T., 3/31/2021 p. 51]. During the sweep, the K-9 alerted to two different areas of the vehicle. [N.T., 3/31/2021 p. 107]. After the sweep, the vehicle was secured with the intent of obtaining a search warrant for a more thorough search of the vehicle. [N.T., 3/31/2021 p. 51].

On cross, Officer Tokonitz testified that while secured in the back of the patrol vehicle, Mr. Catlett began asking if the officer's found a gun. [N.T., 3/31/2021 p. 59]. Officer Tokonitz continued to acknowledge that Mr. Catlett was never Mirandized at all during this incident. [N.T., 3/31/2021 p. 60].

On cross, Officer Tokonitz was also asked how much marijuana was found, to which he approximated was around two grams. [N.T., 3/31/2021 p. 66]. Officer Tokonitz testified that he placed Mr. Catlett under arrest for possession of marijuana and that he searched the vehicle incident to arrest. [N.T., 3/31/2021 p. 87].

5

On cross, Officer Tokonitz testified that he conducted the pat-down for officer safety based off of the totality of the circumstances based on his training, experience, and knowledge of the area being known for high-crime and high-drug activity. [N.T., 3/31/2021 p. 82, 84].

Officer Tokonitz agreed on cross that other than the search warrant that occurred after the vehicle was searched and towed, a search warrant prior to Officer Tokonitz's initial search of the vehicle was never obtained. [N.T., 3/31/2021 p. 88].

## **DISCUSSION**

On review from an order suppressing evidence, the reviewing court shall consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The reviewing court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Commonwealth v. Wright*, 2021 WL2345903 (Pa. Super. 2021). Moreover, it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony. *Commonwealth v. Mattis*, 2021 WL 1707124 (Pa. Super. 2021). The suppression court is free to believe all, some of none of the evidence presented at the suppression hearing. *Commonwealth v. Shaw*, 246 A.3d 879 (Pa. Super. 2020).

This court finds the testimony provided by Officer Tokonitz to be credible, in part. Officer Tokonitz's credibility is questionable regarding his testimony regarding the smell of fresh marijuana emanating from the defendant's vehicle, as well as his ability to smell such marijuana when it is sealed in a sandwich bag, for which the bag only contains approximately two grams of marijuana. Additionally, the Officer's credibility is highly questionable regarding defendant's alleged response to the Officer's interrogation regarding the smell of marijuana.

**THE STOP OF DEFENDANT'S VEHICLE WAS BASED ON PROBABLE CAUSE THAT A MOTOR VEHICLE VIOLATION HAD OCCURRED AND THEREFORE WAS A LAWFUL STOP.**

The law of the Commonwealth is settled that when it is not necessary to stop a vehicle to establish that a violation of the motor vehicle code has occurred, an officer must possess probable cause to stop the vehicle. *Commonwealth v. Wilson*, 237 A.3d 572 (Pa. Super. 2020). To establish probable cause to stop a motor vehicle, the police officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Motor Vehicle Code. *Id.* The Court in *Shaw* stated, "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Shaw*, 246 A.3d 897, 884 (Pa. Super 2021). Here, the testimony of Officer Tokonitz supports a finding that he had probable cause to believe that the defendant's conduct, as the driver, violated the motor vehicle code. Officer Tokonitz testified that he saw the defendant's vehicle run a steady red light. Accordingly, the stop of the vehicle was lawful.

**THE WARRANTLESS SEARCH OF THE VEHICLE WAS ILLEGAL AS IT WAS NOT BASED UPON CONSENT, WAS WITHOUT PROBABLE CASUE AND ABSENT EXIGENT CIRCUMSTANCES, AND WAS NOT A VALID INVENTORY SEARCH.**

The Commonwealth contends that this case should be distinguished from the facts of *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), and that the holding in *Alexander* should

not be binding. This Court disagrees and holds that *Alexander* provides a heightened standard for all warrantless vehicle searches in the Commonwealth.

A non-consensual, warrantless search of a vehicle for contraband may not, as a general rule, be undertaken by police in the absence of probable cause to believe the vehicle contains evidence of criminal activity. *Commonwealth v. Loughnane*, 173 A.3d 733, 737 (Pa. 2017).

On December 22, 2020, the Pennsylvania Supreme Court held that warrantless vehicle searches require both probable cause and exigent circumstances under *Article I, Section 8* of the Pennsylvania Constitution. *Commonwealth v. Alexander*, 243 A.3d 177, (Pa. 2020).

Similarly, in *Commonwealth v. Barr*, the Pennsylvania Superior Court held that the odor of marijuana emanating from a vehicle during a police traffic stop, alone, is not sufficient to establish probable cause to conduct a warrantless search. *Commonwealth v. Barr*, 240 A.3d 1263. (Pa. Super. 2020). The court stated that "the odor of marijuana may contribute to a finding of probable cause, as possession of marijuana remains illegal generally, but the odor alone does not imply individualized suspicion of criminal activity." *Id.* at 1288. As a result, the "plain smell doctrine" had been altered and diminished by Pennsylvania's Medical Marijuana Act, *35 Pa.C.S.A. § 10231.101* et seq.

The *Alexander* Court in its discussions pertaining to exigent circumstances did not offer a definition of such circumstances that will apply to all scenarios. *Alexander*, 243 A.3d at 208. The Court stated, "No case law suggests that the exigency requirement in other scenarios is subject to precise definition." *Id.* The Court continued by noting, "The basic formulation of exigencies recognizes that in some circumstances the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment. That inquiry is not amenable to per se rules and requires a consideration of the

totality of the circumstances." *Id.* An exigent circumstance will arise, "where the need for prompt police action is imperative, either because evidence is likely to be destroyed, or because there exists a threat of physical harm or to police officers and other innocent individuals." *Commonwealth v. Stewart*, 740 A.2d 712, 717 (Pa. Super. 1999).

In applying to the aforementioned rules of law to this case, it is important to note that *Alexander* is controlling law for this Court's analysis even though the incident occurred before it had been decided. The Court in *Alexander* discussed how its ruling shall apply retroactively where the issue in question is properly preserved at all stages of adjudication, up to and including any direct appeal.

Applying the new law, Officer Tokonitz needed probable cause in addition to exigent circumstances to conduct the warrantless search; neither of which were present. The odor of marijuana to support probable cause is not enough under *Barr*, and the marijuana found was visible after Officer Tokonitz asked the defendant to open the door to get a visual of the marijuana that was admitted to being in the vehicle. On the other hand, there were no exigent circumstances present. The facts of this case show that the defendant complied with all of Officer Tokonitz's commands, was cooperative throughout the entire interaction, and made no furtive movements. Officer Tokonitz also waited to initiate the traffic stop at a safe location, where the defendant's vehicle was not obstructing the highway. In the area of the traffic stop occurred there were homes and streetlights and the defendant did not give any indication that he had any connection to the neighborhood. Furthermore, Officer Tokonitz admitted in his testimony that he was within the vicinity, approximately seven blocks, from a police station and could have called them to make sure the vehicle was secured while he got a search warrant, but he did not do so.

Furthermore, the Commonwealth contends that the above analysis not applicable because the search of the vehicle was completed pursuant to an exception to the warrant requirement, an inventory search. In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the vehicle, i.e., have lawful custody of the vehicle. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding vehicles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow) and protecting the community's safety. *Commonwealth v. Peak*, 230 A.3d 1220 (Pa. Super. 2020). In addition, the second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable police procedures and in good faith and not for the sole purpose of investigation. *Id.* at 1227. The second inquiry by a court concentrates on whether the inventory search is a legitimate one; that the purpose of an inventory search can never be to uncover criminal evidence; rather it is designed to safeguard seized items in order to protect the defendant and the police. *Commonwealth v. Hennigan*, 753 A.2d 245 (Pa. Super. 2000). In the instant case, there were not legitimate reasons for towing the vehicle. As mentioned, the vehicle was properly registered and insured. The vehicle was not obstructing the roadways or impeding the flow of traffic, but rather it was safely parked in a residential area with streetlights. Regardless, even assuming that the tow was legal, and Officer Tokonitz has the lawful authority to impound the defendant's vehicle, the warrantless search was not based solely upon police procedure before towing the vehicle. This Court cannot overlook the motive for the warrantless search, i.e. to uncover criminal evidence.

The Commonwealth also contends that the warrantless search is justified because Officer Tokonitz is following department policy. Such an argument is without merit because *Alexander* was clear that there is a heightened standard to vehicle searches, and the policy that was followed here does not meet that standard, since it does not require more than probable cause. More specifically, the *Alexander* court noted that, "If it is clear that a practice is unlawful, individuals' interest in its discontinuance clearly outweighs any law enforcement entitlement to its persistence." *Alexander*, 243 A.3d at 189.

Overall, the inventory search conducted in this case was unlawful as there was not an exigent circumstance to trigger the warrant exception, and the drugs and weapons uncovered as a result are due to an illegal search. The Commonwealth's argument of inevitable discovery is also without merit as it is premised on the defendant's arrest and search of the vehicle, which is determined to be illegal.

**THE PAT-DOWN SEARCH CONDUCTED WAS UNLAWFUL.**

Officer Tokonitz noted in his testimony that he conducted a pat-down of the defendant for officer safety. The Pennsylvania Supreme Court has held that once a police officer has reasonable suspicion of criminal activity sufficient to conduct an investigation, to conduct a pat-down he must possess a further "justified belief that the individual, who's suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others. *Commonwealth v. Zhahir*, 751 A.2d. 1153, 1158 (Pa. 2000). The officer need not be absolutely certain the individual is armed; the issue is whether a reasonably prudent man in this circumstance would be warranted in his belief in his safety or the safety of others was in danger. *Commonwealth v. Taylor*, 771 2d. 1261, 1269 (Pa. 2001). If a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a

11

weapon, those movements will buttress the legitimacy of a protective weapon search of the location where the hand movements occurred. *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. 2009). However, an officer needs to articulate the specific facts that would justify his suspicion that his safety was at risk. *Id.*

Here, as noted above, the defendant complied with Officer Tokonitz's commands and was cooperative throughout the entire incident. In addition, the defendant produced valid information on the vehicle and license and insurance information related to the vehicle. Also, the stop occurred in a neighborhood with streetlights, the vehicle was not obstructing traffic, and the defendant gave no indication of any ties to the neighborhood to warrant safety concerns. Aside from this, Officer Tokonitz did not provide any other articulable facts to indicate his safety was a concern. Accordingly, coupled with the lack of the defendant being given his Miranda warnings, the defendant's alleged statements made to Officer Tokonitz for the pat down and the subject of the pat down where alleged illegal items were seized were properly suppressed.

## DEFENDANT'S STATEMENTS WERE TAKEN IN VIOLATION OF HIS MIRANDA RIGHTS.

Throughout this incident, the defendant allegedly made unsolicited statements regarding his knowledge of the gun that was uncovered by the illegal search. The Supreme Court in its consideration of the voluntariness of a confession gives great weight to the fact that the defendant was fully apprised and expressly waived his Miranda rights before any substantive questioning began and before any alleged inducement to confess. *Commonwealth v. Templin*, 795 A.2d 959, 966 (Pa. 2002).

For determining whether the *Miranda* requirements are triggered, an individual must be "in custody." Generally, the usual traffic stop is analogous to a Terry Stop and does not require

12

Miranda warnings. However, if during the course of the stop, a person is "physically deprived of their freedom or placed in a situation in which the person believes his or her movement or freedom of action is restricted, the person is custody and Miranda warnings are required." *Commonwealth v. Oppel*, 754 A.2d. 711 (Pa. Super. 2000).

Officer Tokonitz in his testimony confirmed that the defendant was in the back of his patrol vehicle and in handcuffs when he allegedly made unsolicited statements about the potential finding of a gun. The defendant was also in custody later at the police station when he was being processed and fingerprinted, where he made addition statements regarding the gun. Notwithstanding Officer Tokonitz's recollection that the defendant made unsolicited statements that there was a small amount of marijuana in the vehicle's door pocket; this Court finds that from the inception of the stop the defendant reasonably believed he was in custody. Accordingly, Miranda warnings were required and since none were ever given, all of the defendant's statements should be suppressed.

## CONCLUSION

For the abovementioned reasons, this Court properly granted Appellee's motion to suppress.

BY THE COURT:

**George A. Pagano,** **J.**

2021 NOV 23 PM 3: 04

FILED

13