J-S08025-20

2020 PA Super 76

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :        PENNSYLVANIA
                                     :
              v.                           :
                                     :
                                   :
DARNELL LEWIS PEAK            :
                                   :
           Appellant            :    No. 1056 WDA 2019

Appeal from the Judgment of Sentence Entered February 19, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007543-2017

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

OPINION BY McCAFFERY, J.:                   FILED MARCH 30, 2020

     Darnell Lewis Peak (Appellant) appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his non-jury conviction of possession with intent to deliver (PWID) heroin[1] and related offenses.  Appellant contends the trial court erred when it denied his motion to suppress evidence recovered during an illegal inventory search of his vehicle.  We hold that, under the facts of this case, 75 Pa.C.S. § 6309(a)(1) authorized the police officer, who legally stopped the vehicle Appellant was driving while his license was under suspension, to impound, and subsequently inventory search, the vehicle which was stopped at an operable gas pump. Accordingly, we affirm.

_____

[1] 35 P.S. § 780-113(a)(30).

On March 3, 2017, Appellant was arrested and charged with PWID following a traffic stop. He filed a pre-trial motion to suppress the evidence recovered during an inventory search of his vehicle. The facts surrounding the traffic stop, and subsequent search, were developed during the suppression hearing, as follows. On March 3, 2017, at approximately 8:16 p.m., Munhall Police Officer Timothy Stoler was on routine patrol in a marked police vehicle. N.T. Suppression H'rg, 8/1/18, at 4, 10-11, 25. He was driving southbound on West Street, approaching the three-way intersection at East 22nd Avenue. Id. at 10-11. At that time, Officer Stoler noticed a Buick Sedan "was out in the intersection confused on whether it was making a left or right." Id. at 11. The vehicle "had no turn signal." Id. The driver eventually turned left on West Street, and Officer Stoler made a U-turn to conduct a traffic stop. Id. at 12. The vehicle pulled up to a gas pump at the Buy 'N Fly convenience store less than 100 yards from the intersection. Id. at 13. Officer Stoler stopped his patrol car behind the Buick, as the driver, later identified as Appellant, was attempting to get out of the vehicle. Id. The officer directed Appellant to get back in the vehicle and Appellant complied. Id.

Officer Stoler then approached Appellant and asked for identification and insurance. N.T. Suppression H'rg at 14-15. When he did so, he detected the odor of burnt marijuana. Id. at 14. The officer ran Appellant's driver's license number and learned Appellant was under suspension from driving. Id. at 15. Officer Stoler described what happened next:

> I advised [Appellant] that he does not have a driver's license. He is going to have to exit the vehicle. Asked if he had any belongings, phone charger so on and so forth, wallet. He grabbed whatever he needed to grab. He was back by my vehicle at this time. I believe I asked him who the vehicle belonged to. I think he said it was his sister's. I explained to him we are going to have to tow the vehicle. At that point, he had no objections.

Id. The officer explained he did not place Appellant under arrest, but instead, advised Appellant he would "receive citations in the mail for the . . . infractions which he was involved in." Id. at 16.

Officer Stoler then called a private tow company, and proceeded to conduct an inventory search of Appellant's vehicle. N.T. Suppression H'rg at 17, 19. The officer testified he believed it was necessary to tow the vehicle because it was parked "directly in front of a gas pump . . . impeding the business' ability to conduct business as they would regularly do so." Id. at 19. He further explained it was important to conduct an inventory search to document any valuables in the vehicle and protect the police from any claims concerning missing or damaged property. Id. at 20. Officer Stoler admitted Appellant told him he was "going to try and find somebody to get the car" and knew Appellant was talking to someone on his cell phone. Id. at 40. However, the tow truck company arrived approximately 10 minutes later. Id. at 41.

During the inventory search conducted at the gas station, Officer Stoler observed a "small shopping bag, grayish and white . . . [c]ellophane" on the floor behind the front passenger's seat. N.T. Suppression H'rg at 23. When he illuminated the bag with his flashlight, the officer saw small bundles of heroin-stamped bags. Id. At that time, Appellant was handcuffed and placed

under arrest. Id. at 25-27. During a search incident to arrest, the police recovered more than $1,700 from Appellant. Id. at 27.

At the suppression hearing, Appellant testified Officer Stoler knew Appellant's mother was on her way to move the vehicle before the tow truck arrived. N.T. Suppression H'rg at 54-55. He explained he called his sister to ask if she could move the car, and she, in turn, called their mother. Id. at 54. Appellant stated his sister told him that his mother would arrive shortly because she was "in that area." Id. at 55. When asked if he relayed that information to Officer Stoler, Appellant replied:

> Yeah. He was right there. He asked who I was talking to. I told him, my sister, Yvonne. He said she better hurry up and get it before it gets towed.

Id. at 55. Appellant also clarified that although the vehicle is in his sister's name, "it is [his] car [which he] bought . . . with [his] money," and he is the only one who uses the vehicle. Id. at 55, 57.

The trial court delayed a ruling on the suppression motion to allow each party time to file briefs. The court then denied the motion on the morning of Appellant's scheduled trial. Appellant proceeded to a non-jury, stipulated trial, after which the court found him guilty of all charges — two counts of possession of controlled substances (heroin and fentanyl), two counts of PWID (heroin and fentanyl), and one count each of driving with a license and failure to signal.[2] On February 19, 2019, the trial court sentenced Appellant to a

_____

[2] See 35 P.S. § 780-113(a)(16), (30); 75 Pa.C.S. §§ 1501(a), 3335(a).

term of three to six years' imprisonment for one count of PWID, followed by seven years of probation. The court imposed no further penalty on the remaining counts. Appellant did not file a direct appeal.

On March 15, 2019, however, Appellant filed a pro se Post Conviction Relief Act[3] (PCRA) petition. Counsel was appointed and filed an amended petition on May 30, 2019, requesting reinstatement of Appellant's direct appeal rights nunc pro tunc. On July 8, 2019, the PCRA court granted Appellant's request and Appellant filed a timely notice of appeal and Pa.R.A.P. 1925(b) statement on July 18, 2019.

Appellant raises the following two issues on appeal:

1. Whether the inventory search was illegal under 75 Pa.C.S. § 6309.2(a)(1) as no public interest was threatened as [Appellant's] vehicle was on private property and police failed to comply with the Munhall Police Department's inventory policy by failing to make a written list of items found?

2. Whether the impoundment of [Appellant's] vehicle was illegal as [Appellant] was permitted, under 75 Pa.C.S. § 3353(b), to leave his vehicle on private property until a licensed driver arrived to retrieve it?

Appellant's Brief at 3.

Both of Appellant's claims on appeal challenge the trial court's denial of his pretrial suppression motion. Our standard and scope of review is well-established:

When reviewing the denial of a suppression motion, this Court reviews only the suppression hearing record, and not the evidence

_____

[3] 42 Pa.C.S. §§ 9541-9546.

elicited at trial. Where the record supports the suppression court's factual findings, we are bound by those findings and may reverse only if the court's legal conclusions are erroneous.

Commonwealth v. Frein, 206 A.3d 1049, 1064 (Pa. 2019), cert. denied, 140 S.Ct. 844 (U.S. 2020) (citation omitted).

Preliminarily, we note the Commonwealth insists Appellant is entitled to no relief because he "failed to establish he had a reasonable expectation of privacy in the vehicle," which, as Appellant acknowledged, "belonged to his sister, and . . . was registered in her name." Commonwealth's Brief at 10. We disagree.

It is well-settled that "a defendant charged with a possessory offense has automatic standing to challenge a search." Commonwealth v. Burton, 973 A.2d 428, 435 (Pa. Super. 2009) (en banc) (citation omitted). Nevertheless, "in order to prevail, the defendant . . . must show that he had a privacy interest in the area searched." Id. at 434 (citation omitted). In Commonwealth v. Enimpah, 106 A.3d 695 (Pa. 2014), the Pennsylvania Supreme Court clarified that the Commonwealth retains the initial burden to "present evidence that the defendant's constitutional rights were not infringed." Id. at 701. However, if the Commonwealth presents evidence which shows the defendant "lacked such a privacy interest," the burden shifts to the defendant to demonstrate he had a reasonable expectation of privacy in the area searched. Id. Nevertheless, a driver who does not own a vehicle may still establish an expectation of privacy in the vehicle if he can prove he has permission or authority from the owner to drive the vehicle. See

- 6 -

Commonwealth v. Maldonado, 14 A.3d 907, 911 (Pa. Super. 2011) (finding defendant failed to establish expectation of privacy in girlfriend's vehicle he was driving; although he lived with girlfriend, defendant presented no evidence he "had permission from [her] to drive the car") (emphasis added); Burton, 973 A.2d at 436 (holding "[defendant] failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate") (emphasis added).

First, we note the Commonwealth did not make this argument during the suppression hearing, and, for that reason, the trial court did not address Appellant's expectation of privacy, or lack thereof, in its opinion. Accordingly, we could consider the issue waived on appeal. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived[.]).

Furthermore, although Appellant himself admitted the vehicle was "in [his] sister's name," he also testified he bought the car with his money and he is the only person who uses the vehicle. N.T. Suppression H'rg at 55, 57. Thus, unlike in Burton and Maldonado, Appellant presented evidence (albeit his own testimony) that he was a permissive user of the vehicle. Moreover, because the Commonwealth did not raise this issue during the suppression hearing, the trial court did not make a credibility determination regarding Appellant's claim that he was a permissive user. Therefore, we conclude Appellant satisfied his burden of demonstrating he had a reasonable

expectation of privacy in the vehicle searched. See Enimpah, 106 A.3d at 701.

With regard to his substantive claims, Appellant first argues the inventory search of his vehicle was illegal under Section 6309.2 of the Motor Vehicle Code (MVC). See 75 Pa.C.S. § 6309.2. Relying on Commonwealth v. Lagenella, 83 A.3d 94 (Pa. 2013), Appellant contends a police officer may conduct an inventory search pursuant to Section 6309.2 only if he has the authority to impound (or tow and store) the vehicle, not simply immobilize it. Appellant's Brief at 18. He maintains the statute "does not authorize police to take custody of a vehicle except in the interest of public safety." Id. at 24. Appellant argues there was no public safety concern here because the vehicle was parked in front of a gas pump. Id. at 25. Rather, he asserts the officer cited a "private pecuniary interest" — the vehicle was blocking other customers from using the fuel pump — to justify his authorization to tow the vehicle. Id. at 25-26. Considering the short time the vehicle would have remained there until Appellant's mother could arrive to move it, Appellant contends Officer Stoler's "unsupported prognostication of a potential future threat to the safety of others does not support or authorize the search of [his] vehicle." Id. at 26. Moreover, Appellant emphasizes the Munhall Borough Code prohibits the removal of a vehicle if the "person for the time being in charge of the vehicle is present and expresses a willingness and intention to remove the vehicle immediately." Id., citing Munhall Borough Code § 415-86). Appellant also contends the purpose of the search was investigatory "and

not a good faith inventory search" evident by the fact that the officer did not follow proper police inventory search procedures. Id. at 29-31.

Section 6309.2 of the MVC outlines the procedures for the immobilization or towing of a vehicle when the driver is operating without a license or proper registration:

(a) General rule.— . . .

(1) If a person operates a motor vehicle . . . on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, . . . the law enforcement officer shall immobilize the vehicle . . . or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

\* \* \*

(b) Procedure upon immobilization.—

(1) When a vehicle is immobilized pursuant to subsection (a)(1), the operator of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:

(i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and

(ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 (relating to judiciary and judicial procedure) and this title.

\* \* \*

(c) Procedure upon towing and storage.—

(1) Except as provided in paragraph (2), the following steps shall be taken:

(i) The appropriate judicial authority shall notify the appropriate law enforcement officer of the county in which the violation occurred.

(ii) The officer notified under subparagraph (i) shall notify the appropriate towing and storage agent to tow and store the vehicle or combination and provide notice by the most expeditious means . . . to the owner of the vehicle . . . .

75 Pa.C.S. § 6309.2(a)(1), (b)(1)(i)-(ii), (c)(1)(i)-(ii) (emphasis added).

Thus, Section 6309.2 provides different procedures for when a vehicle is immobilized, versus when it is impounded (or towed and stored).[4] In Lagenella, the Pennsylvania Supreme Court explained when police may conduct an inventory search of a vehicle:

An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. In Commonwealth v. Henley, [909 A.2d 352 (Pa. Super. 2006) (en banc),] the Pennsylvania Superior Court, citing [South Dakota v.] Opperman, [428 U.S. 364 (1976),] explained:

In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, i.e., have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.

_____

[4] We note the Lagenella Court concluded there was "no distinction between a vehicle which has been 'impounded' and one that has been "towed and stored'" as that phrase is used in Section 6309.2. Lagenella, 83 A.3d at 100.

- 10 -

> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.

Id. at 102-03 (some citations omitted and emphasis added).

Appellant contends on appeal that he should have been allowed to leave the vehicle on private property to interfere with an ongoing business so as to prevent law enforcement from discovering the illegal contraband pursuant to an inventory search. However, the trial court found Officer Stoler had the authority to tow Appellant's vehicle, and, accordingly, conduct an inventory search:

> [I]t is abundantly clear that [Appellant's] motor vehicle privileges were suspended and he was driving a vehicle he did not own. Accordingly, [Officer] Stoler had the authority to immobilize the vehicle with the sole question remaining as to whether or not it was in the interest of public safety to have that vehicle towed and have an inventory search conducted of that vehicle. [Appellant] maintains that the gas station area was private property and, therefore, no public interest was being disturbed by where he parked his vehicle in front of one of the gas pumps. This contention conveniently ignores the purpose for which the Buy 'N Fly conducted its business. While the property may have been owned by private owners, it was obviously open to the public since there were four functional gas pumps on that property and there were several individuals who complained to police during the course of the police inventory of [Appellant's] vehicle, that [the] vehicle and the police cars were obstructing that lot and interfering with their use of those gas pumps. It is unquestioned that it was necessary to move [Appellant's] vehicle so as to remove the obstructions of the use of that property, which included the use of all of the gas pumps.

Trial Ct. Op. at 5-6.

We agree with the analysis of the trial court. In *Lagenella*, the Supreme Court determined there was no basis for an inventory search because "the Commonwealth failed to introduce any evidence that [the officer's] decision to tow [the defendant's] vehicle was based on public safety." *Lagenella*, 83 A.3d at 102. Indeed, the vehicle was parked in a legal spot, albeit approximately two feet from the curb, and the officer acknowledged the vehicle was "not impeding the flow of traffic in any manner." Id. at 96, 102. Compare *Commonwealth v. Palmer*, 145 A.3d 170, 171 (Pa. Super. 2016) (holding officer had authority to order defendant out of vehicle during ongoing traffic stop so vehicle could be towed; "where officers properly stopped a vehicle for a traffic infraction, where the driver did not stop in a legal parking spot, and where none of the occupants . . . had a valid license, towing the vehicle was a task tied to the traffic stop").[5]

Conversely, here, Officer Stoler testified Appellant's vehicle was parked "in front of the gas pump impeding the business' right to do business and utilize their equipment on their property." N.T. Suppression H'rg at 17. He explained that he had "spoken on several [prior] occasions with the manager," and he knew the owner did not want vehicles to remain at the location. Id. at

_____

[5] We note the underlying question in *Palmer* was whether "officers had the authority, as part of the ongoing traffic stop, to order [the defendant] to exit the vehicle so that it could be towed." *Palmer*, 145 A.3d at 171 (emphasis added). The defendant's behavior, both before and after he exited the vehicle, provided the officer with reasonable suspicion to conduct a pat-down search, which, in turn, led to the discovery of heroin on his person. Id. at 172.

18, 39. Furthermore, the officer stated "[s]everal patrons" complained because Appellant's car and the responding police vehicles were blocking the gas pump area. Id. at 41. Thus, Appellant's vehicle, blocking a gas pump, was not in a "legal parking spot."

Although the MVC does not define the phrase "in the interest of public safety," we conclude that it encompasses the situation herein — where a vehicle is not in a designated parking spot, but rather, is stopped in front of a gas pump, obstructing the business therein. Indeed, it is clear that pursuant to Lagenella, the police could have towed Appellant's car if it was "impeding the flow of traffic" or parked illegally on the street. Lagenella, 83 A.3d at 102. A car parked in a "no parking zone" does not raise any more of a safety concern than that "illegally" parked at a gas pump.[6] Accordingly, we agree

_____

[6] For this reason, we reject Appellant's unsupported assertion that "a private pecuniary interest is . . . insufficient[ ] to authorize any action by police other than immobilization[.]" Appellant's Brief at 25-26. Appellant's vehicle was not simply occupying a parking space in a private lot. Rather, it was stopped in front of a gas pump at a station open for business, and, thus, impeding the business traffic.

Moreover, we note Appellant's reliance on Commonwealth v. Barlow, 2006 Pa. Dist. & Cnty. Dec. LEXIS 318 (Chester Cty 2006), is misplaced. See Appellant's Brief at 23. Preliminarily, we note this Court is not bound by decisions of the Court of Common Pleas, "even if directly on point." Keller v. Mey, 67 A.3d 1, 6 n.6 (Pa. Super. 2013). Furthermore, the facts in Barlow are distinguishable from those herein. In that case, when a police officer activated his lights to conduct a traffic stop, the defendant pulled into a gas station parking lot, and "stopped his vehicle near the . . . parking lot curb that border[ed] the parking lot and [ran] parallel to" the road. Barlow, 2006 Pa. Dist. & Cnty. Dec. LEXIS 318, at *3. Although the vehicle was not in a marked parking spot, it was in an area where drivers sometimes park in the lot, and

with the trial court's determination that Officer Stoler had the authority to impound Appellant's car.

We also reject Appellant's argument that, pursuant to the Munhall Borough Code, Officer Stoler could not impound the vehicle because Appellant expressed his intention to remove it. See Appellant's Brief at 26-27. Section 415-85 of the Munhall Borough Code states:

> No vehicle shall be removed under the authority of . . . the Vehicle Code if, at the time of the intended removal, the owner or the person for the time being in charge of the vehicle is present and expresses a willingness and intention to remove the vehicle immediately.

Munhall Borough Code § 415.86.[7]

First, we note this claim is waived because Appellant did not raise it before the suppression court. See Pa.R.A.P. 302(a) ("Issues not raised in the

_____

"at least [25] feet from the nearest gas pumps and a . . . greater distance from the mini-mart." Id. at **3-4. There was no evidence presented the owner of the gas station communicated "to anyone that the . . . car needed to be moved[.]" Id. at *5. Significantly, the officer allowed the defendant to call his friend to move the car, and the friend — who also knew the officer — directly spoke to the officer on the telephone, and told him she would "be right there" to retrieve the car. Id. at **6-7. Knowing this information, the officer still decided to conduct an inventory search of the car, which the trial court ultimately determined was improper. Id. at **7, 16-20. Conversely, here, Appellant's vehicle was parked in front of a gas pump, impeding the business operations of the gas station, and the record does not clearly reflect that Officer Stoler was aware someone would arrive shortly to move the vehicle.

[7] On September 26, 2019, Appellant requested the trial court supplement the record to include certain provisions of the Munhall Borough Code, as well as the Munhall Police Department's inventory search policy. See Appellant's Motion to Supplement Record, 9/26/19, at 2. The trial court granted the motion by order entered October 25, 2019.

lower court are waived and cannot be raised for the first time on appeal."). Second, as the Commonwealth points out, the copy of the Borough Code Appellant included in the certified record is dated August 16, 2019. Commonwealth's Brief at 22; Munhall Borough Code, Chapter 415. There is no indication whether this provision was in effect on the date of the traffic stop at issue, that is, March 3, 2017. Lastly, even if we were to consider the applicability of Section 415-86, we would conclude it does not entitle Appellant to relief. While Appellant was a "person . . . in charge of the vehicle" at the time of the intended removal, he was unable to remove the vehicle "immediately" because he was unlicensed. Munhall Borough Code § 415.86. Furthermore, although Appellant insists he told the officer his mother was on her way to take custody of the vehicle,[8] Officer Stoler testified to the contrary:

> [Commonwealth]: And did [Appellant] tell you his mother or aunt or sister could come and get the car within minutes?
>
> [Officer Stoler]: No
>
> [Commonwealth]: Did you hear [Appellant] talking on the phone?
>
> [Officer Stoler]: He was attempting to find somebody to get the car.
>
> [Commonwealth]: So you heard him talking to somebody about getting the car?
>
> [Officer Stoler]: No. I was conducting my business. He told me he was going to try and find somebody to get the car.

_____

[8] See N.T. Suppression H'rg at 55.

N.T. Suppression H'rg at 40. Accordingly, the record does not establish that Officer Stoler was aware Appellant's mother would arrive shortly to move the vehicle.

Appellant also insists the "record shows the search was investigatory and not a good faith inventory search" because the search did not comply with the Munhall Police Department Procedures. Appellant's Brief at 29, 31. Specifically, Appellant argues: (1) the vehicle was not impeding traffic; (2) "no inventory card was completed[;]" (3) the contraband recovered was not "reported on an inventory search record[;]" and (4) the inventory search of the vehicle was never completed. Id. at 31.

The Munhall Police Department Inventory Search of Towed or Impounded Vehicles Policy provides, in relevant part:

I. PURPOSE

A. The purpose of this policy is to provide officers with uniform guidelines to follow when conducting a warrantless inventory search of a motor vehicle that is to be impounded or towed at the direction of police. These guidelines are directed towards the achievement of the following:

1. Protection of police officers and the department from claims or disputes concerning allegedly lost or stolen property.

2. Protection and preservation of property for its owner while the property remains in police custody.

3. Assurance that inventory searches are conducted within the limits imposed by the courts.

B. Any vehicle towed or impounded at the direction of a Munhall police officer from public or private property within or outside of Munhall Borough is to be inventory searched for valuables. . . .

* * *

II. IMPOUNDMENT

    A. Officers are authorized to impound a motor vehicle under a variety of circumstances. These circumstances include, but are not limited to the following situations:

* * *

        2. The motor vehicle is illegally parked or obstructing or impeding the normal and safe movement of traffic and must be towed.

* * *

III. INVENTORY PROCEDURES

* * *

    C. A Munhall Police Department vehicle inventory card is to be completed with each vehicle inventory. This record is to be as complete as possible. . . .

* * *

    G. Items of contraband and/or potential evidentiary value are to be removed from the vehicle and secured. If found while conducting the inventory custodial search, they are to be transported to the Detective or Chief of Police for the purpose of safekeeping and storage. They are also to be listed on the inventory search record.

Munhall Police Department Inventory Search of Towed or Impounded Vehicles Policy at I(B), II(A)(2), III(C), (G).[9]

With regard to Appellant's first assertion — that the vehicle was not impeding traffic — we have already determined that Officer Stoler's decision to tow, rather than simply immobilize, Appellant's vehicle was proper under

_____

[9] As noted supra, the trial court granted Appellant's post-appeal request to supplement the certified record with the Munhall Police Department's inventory search policy. See Order, 10/24/19.

Section 6309.2 and Langenella. Furthermore, with regard to his claims concerning the officer's failure to follow department procedures, the trial court opined:

> The police did not find any other valuables in the vehicle other than the bag containing the stamp bags of heroin and, as such, there was no property that would have been returned to the owner or driver of that particular vehicle. The property that was seized from the vehicle was, in fact, listed on the police report and as such, it was in conformity with the purpose of the Munhall Police Department inventory search policy.

Trial Ct. Op. at 6-7.

We agree with the reasoning of the trial court. During cross-examination, Officer Stoler testified that the only items of value in the car were taken by police and recorded on the "evidence/property sheet which is held as the chain of evidence[; t]here was nothing else in the car." N.T. Suppression H'rg at 42, 46. Appellant's counsel then questioned the officer whether, pursuant to department policy, he was required to provide a "specific list [of items of value] in regard to the inventory search." Id. at 45. Officer Stoler replied:

> When you refer to Section G[ of the policy], contraband, evidence, jewelry value, which these items could have been, are on the inventory search record, which is worded differently, which is our evidence property, evidence chain or evidence paperwork which encompassed the evidence receipt from the receiver from the Crime Lab, so on and so forth.

Id. Furthermore, he emphasized there were no items to inventory because everything of value was "taken for evidence and for safekeeping." Id. at 46. Thus, because the police documented everything of value in the car, we

conclude Officer Stoler's failure to complete a specific "inventory search record" is of no moment. The officer's proper inventory search led to the discovery of inculpatory evidence. Therefore, no relief is warranted on this claim.

In his second issue, Appellant argues the impoundment of his vehicle was also improper under Section 3353(b) of the MVC. See 75 Pa.C.S. § 3353(b) ("Unattended vehicle on private property"). That provision prohibits a person from parking or leaving an unattended vehicle on private property without consent of the owner. Id. Appellant acknowledges, however, this provision was the second "theor[y] advanced by the Commonwealth for impounding" his vehicle. Appellant's Brief at 33. As we have concluded the officer had the authority to impound Appellant's vehicle under Section 6309.2, we need not address this issue. [10]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2020

_____

[10] Moreover, Appellant presented no evidence that he had the consent of the owner to leave the vehicle in the gas station lot.