J-A24040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES L. TRAMEL | : | |
| | : | |
| | : | No. 381 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 20, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004082-2020

BEFORE: PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED JANUARY 25, 2023**

Charles Tramel ("Tramel") appeals from the judgment of sentence imposed following his convictions for persons not to possess a firearm and related offenses.[1] We affirm.

The trial court set forth the following factual and procedural history:

> On July 9, 2020, [Tramel] was observed operating a white Dodge Caravan driving on Rockhill Drive in Bensalem by Officer Robert Schwarting. Officer Schwarting noticed [Tramel] repeatedly moving toward the center console of the vehicle. In accordance with standard procedure, Officer Schwarting ran the vehicle's registration through National Criminal Intelligence Center ("NCIC") which revealed the owner of the vehicle was a male born in 1975 with dark hair and brown eyes and that the owner had a suspended driver's license. Upon viewing [Tramel] looking in his rearview mirror while traveling behind the vehicle and observing the vehicle make a left turn, Officer Schwarting determined the driver was more likely than not the registered owner of the vehicle.

---

[1] *See* 18 Pa.C.S.A. § 6105(a)(1).

Officer Schwarting activated his emergency siren and lights, prompting [Tramel] to pull the vehicle over into the horizontal double yellow striped median area between the two opposite travel lanes of traffic. The median area was located shortly before a left-hand turning lane leading into a business or shopping center area. When [Tramel] lowered the vehicle's window, Officer Schwarting immediately detected a strong odor of marijuana. [Tramel] acknowledged he was the owner of the vehicle and that he had a suspended license.

Officer Schwarting returned to his patrol car and ran [Tramel's] name for a second time through NCIC and Bucks County Radio which indicated he had four outstanding traffic warrants out of Magisterial District Court 07-1-01. Bensalem Police headquarters contacted Magisterial District Judge Gallagher's Court who directed Officer Schwarting to bring [Tramel] into Court on the outstanding warrants. Officer Schwarting then called for a backup officer to assist him with taking [Tramel] into custody and transporting [Tramel] by van, as was Bensalem Police Department's policy and standard procedure.

Officer Schwarting reapproached [Tramel's] vehicle and asked him to step out of the minivan. A pat-down for weapons was then conducted. In conversation with Officer Schwarting, [Tramel] admitted to having marijuana in the vehicle. [Tramel] and Officer Schwarting discussed the possibility of moving the vehicle into the nearby shopping center parking lot rather than having the vehicle towed. However, [Tramel] could not operate the vehicle as his license was suspended and Officer Schwarting was prohibited from driving the vehicle under Bensalem Police Department policy.

In light of [Tramel's] admission to possessing marijuana, Officer Schwarting searched the vehicle and found marijuana in the center console. He also looked behind the [front passenger] seat and noticed a gray bag in plain view. Inside the gray bag was another smaller black Nike bag containing a stolen loaded Baretta 9mm gun. While no bullet was present in the chamber, there were bullets in the magazine. [Tramel] stated that the gun did not belong to him and that he did not have a license to carry. Also inside the bag was PCP, THC, gummies, cash[,] and apple baggies that are commonly used to package narcotics. A bank band for money as well as glass bottles which were later determined to contain PCP residue were found throughout the vehicle.

After arriving on the scene, Officer Flanagan placed [Tramel] under arrest and removed a necklace with a knife attached which [Tramel] was wearing prior to placing him in the transport van. [Tramel] was asked by Officer Schwarting if he would like to talk about the gun in the vehicle, to which [Tramel] responded[,] "[N]o." Officer Schwarting then called the duty tow truck as the vehicle was parked unsafely in the double yellow horizontal striped median in the middle of a four-lane busy intersection during weekday travel hours.

Upon arrival at Bensalem Police headquarters, [Tramel] was read his **Miranda** [**v. Arizona**, 384 U.S. 436 (1966)] Rights by Officer Brian Bielecki. Prior to his arraignment, [Tramel] voluntarily addressed Officer Schwarting and asked if he would be able to leave that day and call his wife. [Tramel] also volunteered and made the following statement, "It wasn't mine, I was throwing it out in a dumpster." Officer Schwarting sought clarification, to which [Tramel] indicated the bag and its contents, including the loaded weapon.

\* \* \* \*

[Tramel] filed a motion to suppress on October 16, 2020 seeking to preclude all evidence produced as a result of the alleged illegal vehicle stop and vehicle search. A hearing on the Motion to Suppress was held . . . on August 9, 2021 and August 10, 2021. The requested relief was denied, and th[e c]ourt set forth the following Findings and Conclusions of Law[:]

1. The stop of [Tramel's] vehicle must be based on reasonable suspicion because further investigation was required to determine whether the operator of the vehicle was the registered owner. . . ..

2. The stop of [Tramel] was lawful as it was based on reasonable suspicion because the officer had specific and articulable facts indicating that the operator of the vehicle more likely than not matched the description given to the officer. . . . 75 Pa.C.S.[A.] § 6[3]08(b).

3. When a person operates a vehicle with a suspended license, a law enforcement officer shall immobilize the vehicle or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent. 75 Pa.C.S.A. § 6309.2(a)(1).

4. T[ramel's] vehicle [was] parked in the double yellow hash-lined area shortly before a turning lane in a four-lane roadway which is a high trafficked area, was a risk to public safety, and therefore the officer appropriately directed the vehicle be towed. *See id*.

5. "In no case shall parking on public roads, streets or thoroughfares be permitted in nonresidential districts." Bensalem, Pennsylvania Code of Ordinances § 232-586.

6. An inventory search is permissible when the officer has lawfully impounded the vehicle, and the police have acted in accordance with a reasonable standard of policy routinely securing and inventorying the contents of the impounded vehicle. *Commonwealth v. Lag[e]nella*, 83 A.3d 94 (Pa. 2013). The vehicle was lawfully impounded when it was in police custody.

7. Bensalem Township Police Department Policy requires the entire motor vehicle to be impounded shall be inventoried. The interior will be inventoried according to the major areas of the vehicle. The inventory will extend to all areas of the vehicle where personal property or hazardous materials may reasonably be found, including but not limited to, the console, passenger compartment, trunk, glove compartment, storage compartment and any containers.

8. Furthermore, the inventory search conducted on [Tramel's] vehicle and interior was also permissible under the inevitable discovery rule. [Tramel] admitted to owning the car, the outstanding traffic warrants, the suspended license[,] and to marijuana being present in the vehicle prior to the search. The vehicle in question was to be removed and towed from the center of the four-lane roadway, regardless of the marijuana alone, because [Tramel] could not operate the car without a valid driver's license and was to be taken into custody as a result of the outstanding traffic warrants. . . . Therefore, the car was to be inventoried, as a result of either the outstanding warrants or the contraband found inside the vehicle. Thus, the evidence would have inevitably been discovered.

9. The statement made in a custodial setting will not be suppressed where [a d]efendant "spontaneously blurts out" the statement or makes the incriminating statement in

the course of "small talk" with authorities. ***Commonwealth v. Garvin***, 50 A.3d 694 (Pa. 2012). T[ramel] volunteered the statement to Officer Schwarting without questioning, and therefore the statement shall not be suppressed.

[Tramel] subsequently proceeded to a negotiated stipulated waiver trial before th[e trial c]ourt. Th[e trial c]ourt found [Tramel] [g]uilty of [the lead charge, person not to possess a firearm, and several related offenses. The court sentenced Tramel to an aggregate term of fifty to one hundred and twenty months of incarceration; the conviction for the lead charge carried a penalty of fifty to one hundred and twenty months, and Tramel received a combination of concurrent sentences and no further penalties for the remaining convictions.] [Tramel] timely filed an appeal to the Superior Court of Pennsylvania and complied with th[e trial c]ourt's [o]rder issued pursuant to Pa.R.A.P. 1925(b) . . ..

Trial Court Opinion, 3/16/22, at 1-6 (footnotes, unnecessary capitalization, and citations to the record omitted).

Tramel raises the following issues for our review:

1. The lower court erred in denying [Tramel's] motion to suppress the vehicle stop[,] as the Commonwealth failed to establish that Officer Schwarting had the requisite probable cause to perform a vehicle stop.

2. An inventory search [wa]s improper because the Officer's decision to tow [Tramel's] vehicle was based on the unlawfully obtained evidence. Accordingly, an inventory search would not have been conducted and therefore the inevitable discovery doctrine does not apply.

3. [Tramel's] response to Officer Schwarting's request for clarification of [Tramel's] statement "it wasn't mine" was likely to invoke an incriminating response. Accordingly, the statement was made in violation of ***Miranda*** and therefore should have been suppressed.

Tramel's Brief at 14, 16, 26 (unnecessary capitalization omitted).[2]

Our standard of review for an order denying a suppression motion is well-settled:

> [Our review] is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Singleton***, 169 A.3d 79, 82 (Pa. Super. 2017) (internal citations omitted).

In his first issue, Tramel challenges the trial court's denial of his motion to suppress the fruits of an allegedly illegal vehicle stop. Section 6308(b) of the Motor Vehicle Code ("MVC")[3] provides the requisite quantum of suspicion for a traffic stop:

> (b) Authority of police officer.—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a

---

[2] Tramel purports to raise six issues in his statement of questions involved. ***See*** Tramel's Brief at 6. However, we note with disapproval that Tramel's argument section is divided only into three parts corresponding to the issues as stated above. We address the issues as stated in Tramel's argument section. ***Cf.*** Pa.R.A.P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent").

[3] ***See*** 75 Pa.C.S.A. §§ 101 *et seq*.

> violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b). This Court has further explained that, consistent with section 6308(b),

> [w]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the [MVC] has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a [MVC] violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Commonwealth v. Haines*, 166 A.3d 449, 455 (Pa. Super. 2017) (quoting *Commonwealth v. Salter*, 121 A3d 987, 993 (Pa. Super. 2015)).

The MVC prohibits driving with a suspended license. *See* 75 Pa.C.S.A. § 1543(a). An officer need only reasonable suspicion to effect a traffic stop based on section 1543. *See*, *e.g.*, *Commonwealth v. Farnan*, 55 A.3d 113, 117-18 (Pa. Super. 2012) (holding that a traffic stop was legal based on the

- 7 -

officer's reasonable suspicion that the operator was driving a vehicle with a suspended license, though that information was thirty days' old); *accord Commonwealth v. Hilliar*, 943 A.2d 984, 992 (Pa. Super. 2008) (stating that "the officer . . . formed a reasonable suspicion to conclude that [Hilliar] was driving under suspension while [he] and the officer were still in the officer's primary jurisdiction. Thus, it would have been entirely legal for the officer to execute a traffic stop at that time and at that location").

Here, Tramel argues Officer Schwarting required probable cause to effect the vehicle stop. Tramel maintains that, because the officer lacked probable cause, the stop was illegal. Tramel does not contend that Officer Schwarting lacked reasonable suspicion. *See* Tramel's Brief at 15.

The trial court considered Tramel's argument and concluded it merits no relief:

> In this case, Officer Schwarting ran the registration of the vehicle and discovered the registered owner of the vehicle had a suspended license. Running the registration also revealed a description of the registered owner. Officer Schwarting testified he was able to observe the operator of the vehicle when the driver looked in his rearview mirror a few times and as he was turning and determined the operator to "more likely than not" fit the description of the registered owner. While Officer Schwarting suspected the operator of the vehicle was the owner based on the description provided, the offense of Driving With a Suspended License required further investigation to determine if the operator was, in fact, the registered owner. Here, a violation of the [MVC] was suspected, but a stop was necessary to further investigate whether a violation has occurred. Therefore, the appropriate test in this case was reasonable suspicion. *See Salter*, 121 A.3d at 993.

An officer has reasonable suspicion if it is based on specific and articulable facts. 75 Pa.C.S.[A. §] 6[3]08(b). Officer Schwarting testified he observed a male approximately 40 years of age operating the motor vehicle and compared that observation with the description of the registered owner. This comparison gave Officer Schwarting a reasonable suspicion the operator of the vehicle was driving with a suspended license.

Trial Court Opinion, 3/16/22, at 8-9.

Based on our review, we conclude the trial court applied the proper standard and that Tramel's claim rests on a misapprehension of the quantum of suspicion required for this traffic stop. Officer Schwarting initiated the stop to investigate a possible violation of section 1543(a), which only required reasonable suspicion. *See* 75 Pa.C.S.A. § 6308(b); *see also Haines*, 166 A.3d at 455; *Farnan*, 55 A.3d at 117-18. As Tramel makes no argument concerning Officer Schwarting's reasonable suspicion, this issue, vis-à-vis the correct standard, is waived. *See*, *e.g.*, *Commonwealth v. Murchinson*, 899 A.2d 1159, 1162 (Pa. Super. 2006) (stating that this Court may find waiver pursuant to Pa.R.A.P. 2119(a) based on an appellant's "failure to develop meaningful argument with specific reference to the record in support of his claims"). Accordingly, Tramel is due no relief on his first issue.[4]

_____

[4] Even if not waived, Tramel would be due no relief because Officer Schwarting determined Tramel's license was suspended and observed a male who appeared to be the appropriate age consistent with the registered owner of the vehicle, which gave rise to reasonable suspicion to effect the stop to further investigate whether it was in fact Tramel operating the vehicle. *See Farnan*, 55 A.3d at 117-18.

In his second issue, Tramel argues the trial court erred in denying his suppression motion because the contraband was only found due to an improper tow of his vehicle. Section 6309.2 of the MVC outlines the procedures for the immobilization or towing of a vehicle when the driver is operating without a license or proper registration:

**(a) General rule.—** . . .

(1) If a person operates a motor vehicle . . . on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed . . . **the law enforcement officer shall immobilize the vehicle** . . . **or, in the interest of public safety, direct that the vehicle be towed and stored** by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

\* \* \* \*

**(c) Procedure upon towing and storage.—**

(1) [T]he following steps shall be taken:

(i) The appropriate judicial authority shall notify the appropriate law enforcement officer of the county in which the violation occurred.

(ii) The officer notified under subparagraph (i) shall notify the appropriate towing and storage agent to tow and store the vehicle or combination and provide notice by the most expeditious means and by first class mail, proof of service, of the towing, storage and location of the vehicle . . . to the owner of the vehicle . . ..

75 Pa.C.S.A. § 6309.2(a)(1), (c)(1)(i)-(ii) (emphasis added); **see also Commonwealth v. Peak**, 230 A.3d 1220, 1225–26 (Pa. Super. 2020), *appeal denied*, 239 A.3d 1096 (Pa. 2020), and *cert. denied sub nom.* **Peak v. Pennsylvania**, 141 S.Ct. 1426 (2021). Further, "it is clear that pursuant to **Lagenella**, the police could have towed [a suspect's] car if it was impeding

the flow of traffic or parked illegally on the street." **Peak**, 230 A.3d at 1227

(internal quotations omitted).

This Court has previously set forth the law concerning an inventory

search of a towed vehicle:

> An inventory search of an automobile is permissible when (1) the police have **lawfully impounded** the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle.
>
> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, *i.e.*, have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.
>
> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.

**Peak**, 230 A.3d at 1226 (emphasis in original; internal citations and

indentation omitted).

Under the inevitable discovery doctrine,

> [e]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. . . . [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery

rule is to block setting aside convictions that would have been obtained without police misconduct.

***Commonwealth v. King***, 259 A.3d 511, 522 (Pa. Super. 2021) (internal citation and indentation omitted). Even where it is alleged that an officer performs an inventory search prior to the "proper impoundment" of the vehicle, suppression is not required, provided the evidence would have been discovered during a lawful inventory search. ***See id***.

Here, Tramel contests the tow of his vehicle. He argues "there was no reason for Officer Schwarting to tow [his] vehicle, as the vehicle was not impeding the flow of traffic in any way." Tramel's Brief at 18. Tramel argues his vehicle, which was parked in the median of the road, could have "easily been moved to one of the parking lots adjacent to the median." ***Id***. at 20.[5] He also maintains that the tow was improper because there was an "unlawful vehicle search" during which Officer Schwarting discovered incriminating evidence, which, Tramel maintains, contributed to the officer's decision to tow the vehicle. ***See id***. at 20-21. Tramel contends that the inevitable discovery doctrine does not apply because police would not have inevitably towed the vehicle and discovered the evidence but for the improper search. ***See id***. at 23-25.

---

[5] Tramel also points out that the officer had briefly considered moving the car himself. ***See*** N.T., 8/9/21, at 84. We observe that the officer later testified that it would have been against his department policy to take the keys and park the vehicle somewhere else because of liability concerns. ***See id***. at 107.

The trial court considered Tramel's arguments and determined they merit no relief:

> In this case, [Tramel's] vehicle was parked in the median yellow hash area shortly before a turning lane in a high traffic area on this four-lane roadway. It was a clear risk to public safety to leave the car parked where it was as it impaired visibility of the turning lane at the intersection and was centered between opposite lanes of travel as the video evidence demonstrated. Therefore, the vehicle was effectively in police custody because the car was being lawfully towed[,] as neither [Tramel] nor the Bensalem police officer could drive the vehicle.
>
> * * * *
>
> [Tramel's] car was required to be towed as it posed a risk to public safety while stopped in the yellow median hash area between opposing lanes of traffic in a high traffic area shortly before a turning lane. Under Bensalem Township Police Department Policy, the entire car, including its interior, is to be inventoried after a duty tow. *See* Exhibit CS-1, p. 4. Therefore, the personal property evidence located within [Tramel's] vehicle would have inevitably been discovered by the officer during the routine personal property inventory search of this vehicle which was to be towed to impoundment.

Trial Court Opinion, 3/16/22, at 11-12 (internal citation omitted).

Based on our review, we discern no basis to disturb the trial court's ruling. Tramel's vehicle was parked on "yellow lines, kind of in a center median, [where the lines] alert[] oncoming traffic that there's a turn lane coming up. He stopped in the yellow lines just before the turn lane," which was not a legal parking spot. N.T., 8/9/21, at 35. Officer Schwarting testified that the vehicle was towed pursuant to department policy because of the location, which "was not a safe location," and because Tramel was unable to move the vehicle. *See id*. at 47. Further, as noted above, this was also not

a legal parking spot. Officer Schwarting moreover testified that while he called for a tow only after beginning his search of the vehicle, "***throughout the entire stop, unless we're able to come up with some solution, the vehicle needs to be towed. It cannot be left there***." ***Id***. at 105 (emphasis added). Thus, Officer Schwarting was authorized to lawfully tow Tramel's vehicle. ***See*** 75 Pa.C.S.A. § 6309.2(a)(1); ***Peak***, 230 A.3d at 1227.[6] Furthermore, as noted above, Officer Schwarting searched the vehicle pursuant to the departmental policy on inventory searches. ***See supra*** note 6. However, assuming *arguendo* that the search occurred prior to the tow itself, police would nevertheless have inevitably discovered the contraband during an inventory search subsequent to the lawful tow. ***See King***, 259 A.3d at 522. Therefore, Tramel's second issue merits no relief.

In his third issue, Tramel argues the trial court erred in denying his motion to suppress the inculpatory statements he made to police without being ***Mirandized***. ***See*** Tramel's Brief at 26-28.

This Court has set forth the applicable law as follows:

> [N]ot every statement made by an individual during a police encounter constitutes an interrogation. ***Miranda*** rights are required only prior to a custodial interrogation. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived

---

[6] We note that pursuant to the police department's policy, containers are to be searched during inventory, and there is a preference for doing the inventory "prior to towing the vehicle from the incident location if the officer believes he can safely and practically conduct the inventory on scene." ***See*** N.T., 8/9/21, Com.'s Ex. CS-1, at 3-4.

of [his] freedom of action in any significant way. Furthermore, volunteered or spontaneous utterances by an individual are admissible without the administration of **Miranda** warnings. When a defendant gives a statement without police interrogation, we consider the statement to be volunteered and not subject to suppression. . . . Interrogation is police conduct calculated to, expected to, or likely to evoke admission.

In **Commonwealth v. Sepulveda**, [] 855 A.2d 783, 796–797 ([Pa.] 2004) . . .[,] our Supreme Court stated, *inter alia,* that a statement made in a custodial setting would not be suppressed where the suspect "spontaneously 'blurts out' the statement, . . . or makes an incriminating statement in the course of 'small talk' with authorities, . . . or is merely responding to biographical questioning . . . ." [G]enerally speaking, general information such as name, height, weight, residence, occupation, etc. is not the kind of information which requires **Miranda** warnings since it is not information generally considered as part of an interrogation. Such questions are not calculated to, expected to, or likely to elicit an incriminating response, or ... asked with [the] intent to extract or an expectation of eliciting an incriminating [response].

\* \* \* \*

**Miranda** warnings are required when a suspect is in custody and subjected to interrogation. [Where] the interrogation had not yet begun[,] **Miranda** warnings [are] not required.

**Commonwealth v. Garvin**, 50 A.3d 694, 698–99 (Pa. Super. 2012) (quotations, indentation, and some citations omitted).

Further, a "confession given after a defendant invokes his right to counsel need not be suppressed where the defendant: (1) initiated further communication, exchanges, or conversations with the police, and (2) knowingly and intelligently waived the right to counsel." **Commonwealth. v. Poplawski**, 130 A.3d 697, 712 (Pa. 2015) (internal citations, quotations, and emphasis omitted).

- 15 -

Not every violation of *Miranda* requires reversal. As our Supreme Court has provided:

> A suppression court's error in failing to suppress statements by the accused, however, will not require reversal if the Commonwealth can establish beyond a reasonable doubt that the error was harmless. *Miranda* violations are subject to this harmless error rule.
>
> * * * *
>
> Harmless error exists if the Commonwealth proves that (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Frein*, 206 A.3d 1049, 1070 (Pa. 2019) (internal citations and quotations omitted).

Tramel argues that the trial court erred in denying his suppression motion. He maintains that he invoked his right to remain silent, and while he stated, "[Y]ou know, it wasn't mine. I was going to throw it out at Wal-Mart," Officer Schwarting then asked him for clarification at which point he stated he was referring to the gun. Tramel's Brief at 27-28. Tramel contends his clarification that he was referring to the firearm violated his *Miranda* rights. *See id*. at 28.

The trial court considered Tramel's issue and determined it merits no relief:

The [c]ourt found in this case that [Tramel] voluntarily addressed Officer Schwarting to inquire whether he would be able to leave that day and if he could call his wife. Without questioning by any officer, [Tramel] also offered[,] "It wasn't mine, I was throwing it out in a dumpster." Upon a request for clarification from Officer Schwarting, [Tramel] specified he was referring to the seized bag and its contents, including the loaded firearm.

The Pennsylvania Supreme Court has affirmed that a statement made in a custodial setting would not be suppressed where the suspect spontaneously blurts out the statement. **Garvin**, 50 A.3d at 698. Here, while [Tramel] was in custody awaiting his arraignment, the statements offered to Officer Schwarting were not the result of an interrogation, rather they were spontaneously blurted out by [Tramel]. The only question Officer Schwarting asked was a clarification question after [Tramel] initiated the conversation. Accordingly, th[e c]ourt did not err in refusing to suppress the statements made by [Tramel] because the statements were spontaneously volunteered and not initiated by police questioning.

Trial Court Opinion, 3/16/22, at 13 (internal quotations omitted).

Based on our review, we agree with the trial court that Tramel is due no relief. We note there was no **Miranda** violation initially. Tramel was properly **Mirandized** and then volunteered that the contraband was not his and that he was going to "throw it out." **See** N.T., 8/9/21, at 76-77. By initiating a further exchange with police following his **Miranda** warnings, and volunteering further statements, Tramel waived his right to counsel. **See Poplawski**, 130 A.3d at 712. We further note, however, that Tramel's subsequent clarificatory statement was in response to a question by Officer Schwarting, and the question was likely to elicit an incriminating response— and this occurred after Tramel's invocation of his right to remain silent, notwithstanding it also occurred after he voluntarily stated that he was going

to "throw it out." Assuming the latter clarificatory statement was obtained in violation of **Miranda**, the trial court's error in failing to suppress this statement was harmless.[7] The prejudice to Tramel was *de minimis* because he had already indicated that "it" was not his and that he was throwing it out in a dumpster. The improperly obtained statement, *i.e.*, the clarification from Tramel that he was referring to the bag containing another bag and a gun, was an elaboration of his denial that the items were his. Given the evidence of constructive possession[8] (*i.e.*, the gun was in a bag inside another bag behind the front passenger seat of the vehicle, of which Tramel was the registered owner, and in which he was the only occupant) and that Tramel had indicated knowledge of the contraband in a generalized manner by noting

---

[7] "To the extent our legal reasoning differs from the trial court's, we note that as an appellate court, we may affirm on any legal basis supported by the certified record." **Commonwealth v. Torres**, 176 A.3d 292, 296 n.5 (Pa. Super. 2017) (internal citation and quotations omitted).

[8] This Court has defined "constructive possession" as follows:

> [It] is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

**Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013) (internal citation omitted).

that "it" was not his, we conclude that any harm resulting from the erroneous admission of the clarification is *de minimis*. **See Frein**, 206 A.3d at 1070.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2023